Chrisondath BADALL, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–05–498 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Oct. 5, 2006.

Decided Jan. 31, 2007.

Joseph L. Lanza, Haynes, Boyd & Associates, P.C., Houston, for appellant.

Michael R. Little, Dist. Atty., Michael A. Mark, Asst. Dist. Atty., Liberty, for state.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

A jury convicted Chrisondath Badall of the murder of Ramdath Durgapersad. See TEX. PEN.CODE ANN. § 19.02(b) (Vernon 2003). The jury assessed punishment at fifty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division.

Badall raises four issues on appeal. Issues one and two address the testimony of a district judge who testified as a rebuttal witness for the State. Issue three concerns testimony about a statement Badall made while in police custody. Issue four asserts that the prosecution's questions were a comment on Badall's right to remain silent. We overrule Badall's issues and affirm his conviction.

### Background

Badall owned a tire repair business in Liberty, Texas known as Frank's Tire Shop. Ramdath Durgapersad bought Frank's from Badall and agreed to pay him $150,000.00 for the business. Durgapersad initially paid Badall $100,000.00, and agreed to pay the remaining balance in six months from the date of sale, but never paid.

Badall's case centered on his claim that he shot Durgapersad in self-defense. On the afternoon of January 8, 2004, Badall went to Frank's Tire Shop to see if Durgapersad would begin paying the remaining balance of the purchase price. Badall claims that after he approached Durgapersad, Durgapersad cursed him. Durgapersad then pulled a gun from his waistband. According to Badall, Durgapersad attempted to shoot him but his gun did not fire. At that point, Badall pulled his gun

from his pocket, fired twice, and then ran to his truck and left. Badall testified that when he left, he did not know whether Durgapersad had been wounded by the gunshots. Durgapersad subsequently died.

### Character Testimony By District Judge

In the rebuttal portion of its case, the State called Judge Chap Cain. Judge Cain testified regarding Badall's truthfulness and offered his opinion that Badall was untruthful. Badall's cross-examination demonstrated that Judge Cain's opinion was based strictly on Badall's appearances in Judge Cain's court on other cases.

■ Badall argues that Judge Cain's testimony deprived him of his rights to an impartial jury, to take the stand in his own defense, and to confront the witnesses against him. While the judge's testimony as a character witness may have been subject to objection, when the State called Judge Cain as a witness, the following occurred:

[Prosecution]: Call Chap Cain.

(At the bench, out of hearing of the jury)

The Court: Look, this is for rebuttal and rebuttal only. You can only rebut what he said that you think that was incorrect. I'm not going to let you go into the whole scenario involving those trials.

[Prosecution]: We don't intend to, your Honor.

[Prosecution]: Not what our intention is, Judge.

The Court: Okay.

[Defense Counsel]: Just for a record, I would object to Judge Cain coming in here with his black robe on.

The Court: He doesn't wear a robe.

[Defense Counsel]: Okay.

■ The appellate rules of procedure and settled law provide that to preserve error for appellate review, a party must make a timely and specific objection or motion at trial after an adverse ruling by the trial court. TEX.R.APP. P. 33.1(a); *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim.App.1999). The rules of evidence also require an objection to a ruling admitting evidence. TEX.R. EVID. 103(a)(1). Failure to preserve error at trial waives the later assertion of that error on appeal. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim.App.1999). In fact, almost all error, even constitutional error, is waived if the appellant fails to object. See TEX.R.APP. P. 33.1(a); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993); *Aldrich v. State*, 104 S.W.3d 890, 894–95 (Tex.Crim.App.2003). There are two exceptions to the general rule involving violations of rights that are either "waivable-only" or "absolute systemic requirements." *Aldrich*, 104 S.W.3d at 895. "Examples of rights that are waivable-only include the rights to the assistance of counsel and the right to trial by jury." *Saldano v. State*, 70 S.W.3d 873, 888 (Tex.Crim.App.2002). Badall does not argue that his complaints fall within these exceptions.

Badall's complaint concerns alleged error in the admission of evidence. "We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." *Saldano*, 70 S.W.3d at 889 & nn. 73 & 74 (collecting cases of waiver for lack of objection). "This is true even though the error may concern a constitutional right of the defendant." *Id.*

While we do not condone the use of a judge as a character witness when the judge's knowledge comes solely from his judicial function, the question that must first be addressed is whether Badall was

required to make a timely, specific objection at trial to the judge's testifying as a character witness. We conclude that timely and specific objections consistent with the objections now raised on appeal were required by Texas law.

Badall's objection to Judge Cain's testifying before the jury in his black robe is not consistent with the objections he now urges on appeal. As a result, he has waived his right to appellate review of any error associated with Judge Cain's testifying as a character witness at his trial. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim.App.2005); *Ibarra*, 11 S.W.3d at 197; *Williams v. State*, 622 S.W.2d 116, 119 (Tex.Crim.App.1981). We overrule Badall's first and second issues. See Tex. R.App. P. 33.1.

### Statement in Police Custody

■ Badall complains on appeal that the trial court erred in allowing Officer Cedric McDuffie to testify to a statement Badall made to him while being transferred from Baytown to Liberty after his arrest. We note that upon his arrest, around 7:30 p.m. on the day of the shooting, Sergeant Park gave Badall his *Miranda*[1] warnings. Later that evening, after Badall was taken to the City of Baytown's jail, and during the process of transferring Badall to the City of Liberty's custody, McDuffie began conversing with Badall and asked Badall how he was doing. Badall responded that he was doing okay and asked McDuffie if he still worked for the City of Liberty's police department. McDuffie indicated that he did and asked Badall where he lived and how many businesses he owned. Badall responded, and then inquired as to Durgapersad's condition. McDuffie told Badall that Durgapersad would survive. In re-

sponse, Badall said, "I would have to get the job done right the next time."

Badall filed a pre-trial motion to suppress the testimony in issue. The trial court granted the motion to suppress, and when the State called McDuffie as a witness during its case-in-chief, the State did not attempt to introduce McDuffie's testimony regarding Badall's statement. Subsequently, Badall testified in his own defense. In response, the State called McDuffie as a rebuttal witness and Badall renewed his objection to McDuffie's testimony about his statement. The State advised the judge that it intended to offer Badall's statement for purposes of impeachment. McDuffie subsequently testified that Badall told him that he would "have to get the job done right the next time."

On appeal, Badall complains that his statement to McDuffie constituted custodial interrogation and should not have been admitted over his objection. In response, the State argues that the statement was not a product of custodial interrogation.

Article 38.22 of the Code of Criminal Procedure governs the procedure involved to admit "statements made as a result of custodial interrogation" in criminal cases. Tex.Code Crim. Proc. Ann. art. 38.22, § 3 (Vernon 2005). *Miranda* also places limits on the use of statements produced by custodial interrogations. 384 U.S. at 476–77, 86 S.Ct. 1602. Thus, we must first determine whether Badall's statement was the product of a custodial interrogation.

Even though made when in custody, a defendant's voluntary statements that are not made in response to interrogation are not excluded by either article 38.22 or *Miranda*. See Tex.Code Crim. Proc. Ann.

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 471–72, 86 S.Ct. 1602, 1626–27, 16 L.Ed.2d 694 (1966).

art. 38.22, § 5; *Miranda,* 384 U.S. at 476–77, 86 S.Ct. 1602. In *Stevens v. State,* 671 S.W.2d 517, 519–20 (Tex.Crim.App.1984), the defendant was stopped after committing a crime. At that point, the defendant asked a police officer what he wanted him to do, and the policemen requested that he lie down. *Id.* In so doing, the defendant asked the officer "Why couldn't I have gotten away with it?" *Id.* at 520. The Court of Criminal Appeals held the defendant's statement admissible despite the provisions of article 38.22 because it was a voluntary statement made in custody but not in response to interrogation. *Id.*

The U.S. Supreme Court has also approved the admission of voluntary statements made in custody that are not the product of interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 299–300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (holding that *Miranda* did not prohibit voluntary statement that was not made in response to a question by police even though the defendant was in police custody.) To be suppressed, the incriminating response must have been "the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." *Innis,* 446 U.S. at 303, 100 S.Ct. 1682.

■ There is no evidence that McDuffie reasonably anticipated an incriminating response to his statement regarding Durgapersad's condition. Badall's statement was made in response to McDuffie's answer to Badall's question; it was not the product of a question by McDuffie to Badall. "That the suspect was neither expressly nor implicitly questioned by police officers at the time the statement was made often determines the voluntariness of a statement." *Ramirez v. State,* 105 S.W.3d 730, 741 (Tex.App.-Austin 2003, no pet.) (citing *Stevens,* 671 S.W.2d at 520; *Sanchez v. State,* 589 S.W.2d 422, 423 (Tex.

Crim.App.1979); *Earnhart v. State,* 582 S.W.2d 444, 448 (Tex.Crim.App.1979); *Davis v. State,* 780 S.W.2d 945, 947 (Tex. App.-Fort Worth 1989, pet. ref'd)). There is also no evidence that McDuffie reasonably anticipated an incriminating response from his prior questions about Badall's residence or how many businesses he owned. Questions about a person's address or employment are normally attendant to administrative "booking" procedures and do not constitute custodial interrogation. See generally *Cross v. State* 144 S.W.3d 521, 524, n. 5 (Tex.Crim.App.2004). We hold that Badall's statement to Officer McDuffie was not the product of custodial interrogation. As a result, it was not error to admit it.

■ Furthermore, Badall's statement was admissible to impeach the version of the events to which Badall testified as a witness. The Court of Criminal Appeals has indicated impeachment is a permissible use of a statement that would otherwise be excluded by the *Miranda* rule. *Johnson v. State,* 169 S.W.3d 223, 240 (Tex.Crim.App.2005). According to the State, Durgapersad was unarmed when Badall walked up to him, pulled out a gun, and shot him. In contrast, according to Badall, he was no longer angry that Durgapersad had failed to pay his debt. Badall testified that he walked up to Durgapersad, said "Happy New Year," and in return Durgapersad cursed him and pulled out his gun. In response, Badall pulled his own weapon in self-defense and attempted to shoot Durgapersad's gun from his hand. Badall stated that at the time of the incident, he was unaware if any of his bullets struck Durgapersad.

■ Under Badall's version of the events, Durgapersad's conduct precipitated the altercation. However, Badall's statement that he would have to do a better job next time impeaches his position that he

bore no ill-will toward Durgapersad and that the altercation arose solely from Durgapersad's conduct. When a defendant takes the witness stand, his prior statements can be used to impeach his credibility, even if the statements are the by-product of custodial interrogation. *Harris v. New York,* 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1 (1971). "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Id.*

■ Impeachment is an exception to *Miranda's* general prohibition on the use of custodial statements. *Johnson,* 169 S.W.3d at 240, n. 93. Moreover, article 38.22 provides an exception that allows the admission into evidence of a statement that has bearing upon the credibility of the accused as a witness. TEX.CODE CRIM. PROC. ANN. art 38.22 § 5.[2]

■ Badall's statement tends to show that he intended to kill Durgapersad and thus, makes his version of the events less credible. The statement that Badall made to McDuffie was admitted after Badall testified to his version of the events. A statement admitted to impeach a defendant's prior testimony is admissible despite the absence of a *Miranda* warning.[3] We find no error in the court's admission of Badall's statement and overrule issue three.

### Comments on Badall's Silence

■ The use of a defendant's post-arrest silence violates the right of the accused to remain silent. *Doyle v. Ohio,* 426

U.S. 610, 617–18, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Dinkins v. State,* 894 S.W.2d 330, 356 (Tex.Crim.App.1995). Badall complains of four questions that he asserts embrace his right to remain silent. In this case, the State contends that the defendant's objections were not timely and therefore, any error was no preserved for our review.

All four instances that Badall complains of occurred during his cross-examination. The first of these questions occurred when the State examined Badall about the events that led up to his initial arrest at a restaurant on the evening of the crime.

[Prosecution]: You came outside because you knew it was the police?

[Badall]: Yes, sir.

[Prosecution]: You knew they were going to arrest you?

[Badall]: Yes, sir.

. . .

[Prosecution]: And, at that time, you explained to the police that [Durgapersad] had pulled a gun on you?

[Badall]: I didn't tell no police that.

[Defense Counsel]: Objection. May we approach the bench, your Honor?

[Discussion outside the hearing of the jury, during which the Court states that the objection is sustained.]

The second instance cited by Badall followed immediately after the judge sustained the prior objection.

[Prosecution]: Mr. Badall, when you first came out of the building and you first approached the police, prior to

2. "Nothing in this article precludes the admission of a statement made by the accused in open court at his trial . . . or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness. . . ."

3. In light of our disposition of this issue, we need not address whether the *Miranda* warning given earlier that evening by Sergeant Park was sufficient or determine whether Badall invoked his right to counsel prior to making the voluntary statement in issue.

the time that you were being taken into custody, were you saying something to the police?

[Badall]: I can't really remember. I say something to them, but I can't remember what I say.

[Prosecution]: In fact, you told them, you said, "I did it. . . . I did what you think I did." Isn't that what you told them?

[Badall]: I can't remember, sir.

[Prosecution]: But you said something to them?

[Defense Counsel]: If the Court please, I'm going to object now to partial recitation of what is alleged to have been said by the accused because—

The Court: Y'all approach the bench just a second.

[Discussion outside the hearing of the jury, during which the attorneys discuss what another witness testified that Badall said, and the Prosecution agrees to rephrase the question.]

[Prosecution]: Mr. Badall—

[Badall]: Yes, sir

[Prosecution]: —when you came out of the Nio's restaurant, and you were approaching the police, isn't it true that you said something to this effect: "Whatever you think I did, I did. They had nothing to do with it"?

[Badall]: I can't recall what I said. But at one time I remember a policemen ask me if I want to give a statement or I want to talk to him.

The third instance about which Badall complains occurred while the State questioned him regarding his interaction with McDuffie.

[Prosecution]: In fact, [McDuffie] was in a City of Liberty Police Department uniform, wasn't he?

[Badall]: Yes, sir.

[Prosecution]: So you knew he was a City of Liberty policem[a]n?

[Badall]: I knew him to be a policem[a]n before.

[Prosecution]: So, you didn't tell him that [Durgapersad] had a gun and pulled it on you?

[Defense Counsel]: Object, now, if the Court please. The witness has just said he didn't have any discussion with Officer McDuffie concerning Mr. Durgapersad.

[Prosecution]: Judge, this is a matter of cross-examination. This gentlemen has said—

The Court: I know, but aren't we getting in-pretty close to some constitutional issues?

[Prosecution]: I don't think so, your Honor, not during this time. He wasn't being interrogated. The gentlemen said he wasn't.

[Defense counsel]: He's being asked questions, your Honor. Under the law we submit, respectfully, that that is an interrogation.

[Prosecution]: I'm asking what questions he asked.

The Court: I think, if I'm not mistaken, [Prosecution], you asked him about conversation that he had with them talking to each other, and I think he answered it.

[Prosecution]: That there was no discussion of it, your Honor. Is that your recollection?

The Court: Yes, sir.

[Prosecution]: Okay.

The Court: Sustain the objection.

The fourth instance about which Badall complains on appeal occurred immediately afterwards.

> [Prosecution]: So Mr. Badall, you could talk that night, couldn't you?
>
> [Badall]: Yes, sir.
>
> [Prosecution]: So you didn't feel it necessary to tell [McDuffie] what had happened, did you?
>
> [Badall]: I tell him—
>
> [Prosecution]: Yes or no.
>
> [Badall]: No, sir.
>
> [Defense counsel]: Excuse me. I'm going to object, if the Court please. I think that offends the most recent ruling of the Court.
>
> The Court: I think it does, [Prosecution]. You all approach just a second and let me—
>
> [After a discussion outside the jury's presence, the trial court sustains the objection.]

Although Badall asserted objections to these questions, he failed to pursue any of his objections to an adverse ruling. His objections to these questions were either sustained or the prosecution rephrased its question and Badall made no objection to the question as rephrased. After the trial court sustained his objections, Badall did not request any instructions to the jury to disregard the witness' testimony nor did he request a mistrial.

 Ordinarily, a party must pursue an objection until he receives an adverse ruling. *Anderson v. State*, 932 S.W.2d 502, 507 (Tex.Crim.App.1996); *Harris v. State*, 784 S.W.2d 5, 12 (Tex.Crim.App.1989). A party's failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. *Saldano*, 70 S.W.3d at 889. Because Badall's objection to the first, third and fourth lines of the State's questions were sustained, and he requested no further relief, nothing has been preserved for review on appeal.

 With respect to the second line of questions, Badall never obtained a ruling on his objection and the State rephrased the objectionable question. Badall lodged no additional objection. A party is required to object every time allegedly inadmissible evidence is offered or his objections are not preserved. *Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim.App.1984). Badall's complaint regarding the State's second line of questions to Badall was not preserved.

In summary, the complaints now asserted by Badall on appeal were not preserved for appellate review. We overrule Badall's issues and affirm his conviction.

AFFIRMED.