Affirmed and Memorandum Opinion filed November 13, 2008








Affirmed and Memorandum Opinion filed November 13, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00498-CR

____________

 

TREVOR MCCLAIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 183rd
District Court

Harris County, Texas

Trial Court Cause No. 1064716

 



 

 M E M O R A N D U M  O P I N I O N

A jury found appellant, Trevor McClain, guilty of the
felony offense of theft of $20,000 or more but less than $100,000.  See
Tex. Penal Code Ann. ' 31.03(e)(5) (Vernon 2003).  The trial
court, after finding two alleged enhancements true, sentenced appellant to
forty years= confinement in the Texas Department of Criminal
Justice, Institutional Division.  On appeal, appellant argues (1) his right to
remain silent was violated when the State=s witness
commented on appellant=s post-arrest silence and (2) the evidence
is legally and factually insufficient to prove appellant committed the offense
of theft in excess of $20,000.  Finding no merit in these points, we affirm.








Factual and Procedural Background

On March 25, 2006, Martha Saathoff, a Houston Police
Department officer who was working an approved extra job at Lakewood Church (Athe Church@) in Houston,
Texas, discovered three Sony projectors, a twenty-seven inch LCD monitor, and
two guitars were missing from the Church.[1] 
After an investigation by the Houston Police Department, appellant was arrested
and charged with theft of property valued at $20,000 or more but less than
$100,000.

During trial, Richard Anderson, an investigator with the
Houston Police Department, testified that, after he was assigned to the case,
he visited the Church and viewed the security videotapes.  After viewing the
videotapes, Anderson focused his investigation on two white males.  Anderson
testified through further investigation he obtained appellant=s name as one of
the white males on the videotape.  Anderson then contacted Sasha Shaddock,
appellant=s girlfriend at the time, and asked if she would meet
with Anderson to view some pictures.  Shaddock met with Anderson and identified
both the suspects in the pictures.  








According to Anderson, after he met with Shaddock, he ran a
criminal history check and a pawn-shop check.  Anderson testified the pawn-shop
check revealed appellant had recently pawned property at three different pawn
shops in San Antonio and Houston. Anderson then confirmed that the unique
serial numbers for the three Sony projectors stolen from the Church were
identical to the serial numbers at the pawn shops.  Anderson testified he
visited a pawn shop in San Antonio and recovered one of the projectors. 
Anderson also testified he asked the owner to view a photo spread, which
included appellant=s picture. Anderson then visited a pawn
shop in Houston and recovered a second projector.  Appellant=s father turned
the third projector over to the police.  In addition, Anderson testified the
co-defendant, Steven Mayes, cooperated with the police and told Anderson where
to find the LCD monitor and the two guitars.  

Shaddock testified she met with Anderson and looked at
several photos.  According to Shaddock, she identified the white males in the
photos as appellant and Mayes.  Shaddock also testified that, after she met
with Anderson, appellant called her from San Antonio and told her he was
working on an air-conditioning job.  Shaddock testified she found it odd
appellant was working in San Antonio.  In addition, appellant called Shaddock
after he was arrested and told her Ahe was going to
get off because it was not his idea and the equipment was Steven Mayes= friend=s.@

 Andrea Guidry, a contract engineer for the Church,
testified he was responsible for the maintenance and operation of all the
technical aspects of the Church.  Guidry explained that, as a part of his job,
he often had to negotiate prices, so he considered himself familiar with price
ranges for certain media items.  Guidry testified Sony donated the projectors
to the Church in June 2005.  According to Guidry, the projectors had been used
for approximately 100 hours before they were stolen and were in Aperfect@ and Aimmaculate@ condition.  








Guidry testified Sony valued each projector at $14,995 at
the time it donated them to the Church, and in Guidry=s opinion, the
fair market value of each projector at the time it was stolen was between
$9,500 and $10,000.  Guidry testified he took into account the condition of the
projectors and the fact Sony had stopped production on that particular model
when determining a value.  Guidry also testified he researched several online
stores such as Ebay, Super Warehouse, and ABT Electronics, and at the time of
trial, projectors with the same model number were priced around $8,662. 
Furthermore, Guidry testified he received a second opinion on the projectors= value from a
person he dealt with on a regular basis at Projector Warehouse.  According to
Guidry, that person valued the projectors anywhere from $9,500 to $12,000
each.  On cross-examination, however, Guidry admitted he was valuing the
projectors as if they were brand new because of their limited use. 
Additionally, Guidry admitted the prices he researched on Ebay were merely
quoted prices, and he was not aware of an actual sale on Ebay that involved a
Sony projector with the same model number.

Michael Hodge, owner of the stolen guitars, testified he
was a musician, producer, and leader of the Church=s band.  Hodge
testified one of the guitars stolen was a custom-made guitar with a fair market
value of $1,800 to $2,500 at the time it was stolen.  The second guitar was a
1971 Fender, and according to Hodge, its fair market value was $850 to $1,200
at the time it was stolen.

Paul Hall, director for the audio and technical production
at the Church, testified he was responsible for all of the audio and television
broadcasts at the Church.  Hall testified he bought the twenty-seven inch LCD
monitor in June 2005 for the Church.  According to Hall, he paid $997.99 for
the monitor.  Hall testified that, when the original monitor was stolen, Hall
purchased a new, thirty-inch monitor at Best Buy for approximately $1,000.
Additionally, Hall testified the stolen monitor had been used approximately
twelve hours per week and was in new condition.  In Hall=s opinion, the
stolen monitor=s fair market value at the time it was stolen was
between $650 and $700.

Next, Shirley Gonzalez, owner of a pawn shop in San
Antonio, testified appellant came to her shop in late March 2006 and traded a
Sony projector for $2,700.  Gonzalez testified she spent some time searching on
Ebay with appellant before agreeing on a price. According to Gonzalez, a new
Sony projector with the same model number was priced at $8,800, so she offered
appellant a little over one-fourth the cost.  Gonzalez also testified Anderson
came to her shop a few days later and showed her a photo spread.  Gonzalez
testified she identified appellant as the person who pawned the Sony projector.








Nicholas Hughes, the State=s last witness,
testified he worked at a pawn shop in Houston.  Hughes testified appellant came
to his pawn shop in late March 2006 with a Sony projector and asked for a
loan.  Hughes testified he believed the projector was Aalmost new.@ According to
Hughes, in order to determine the amount of the loan, he looked the item up on
Ebay.  Hughes testified he found a projector that was in significantly worse
shape than appellant=s priced at $6,500.  Based on this price,
Hughes loaned appellant $1,600.  However, on April 12, 2006, the Houston Police
Department placed a hold on the projector because it had been stolen.  Hughes
testified because the projector was stolen, he met with Officer Anderson,
viewed a photo spread, and identified appellant as the person who pawned the
projector.

Appellant called Chris Newlin, owner of a video production
company, as his only witness.  Newlin testified he had experience in using,
acquiring, and maintaining different types of video and audio equipment. 
Because of his experience and knowledge, appellant hired Newlin to evaluate and
value the stolen Sony projectors.  Newlin testified since Sony had stopped
producing that particular model of projectors, the value of the projectors
would quickly depreciate.  Newlin also testified the value of a new object is
often considerably less than the original manufacturer=s suggested retail
price.  Furthermore, Newlin testified the stolen projectors could never have
been resold as Anew,@ despite their
well-maintained condition.

Newlin then testified about the research he performed on
Ebay.  Newlin explained he found only one projector, which was in similar
condition, that actually sold on Ebay.  According to Newlin, this projector
sold for $1,811.  However, Newlin admitted on cross-examination the seller of
that particular projector was in a rush and sold the item very quickly.  Newlin
also testified he found two other projectors on Ebay, one with a start value of
$10,000 and one with a start value of $5,000.  But, Newlin explained that no
one had bid on or bought either of these projectors.  Additionally, Newlin
testified he evaluated some online dealers, and they were selling new
projectors between $5,500 and $6,500.  Newlin then testified, in his opinion,
each stolen projector had a fair market value of $3,600 at the time it was
stolen.  On cross-examination, Newlin explained he arrived at the $3,600 figure
by taking 40% off of the new unit price posted by online dealers.  However,
Newlin could not give an explanation for why he used a 40% deduction.                  








After hearing all of the evidence, the jury found appellant
guilty of the felony offense of theft of $20,000 or more but less than
$100,000.  Subsequently, the trial court, after finding two alleged
enhancements true, sentenced appellant to forty years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  This appeal
followed. 

Discussion

A.      Did the
State Violate Appellant=s Right to Remain
Silent?

In his first issue, appellant argues his right to remain
silent was violated when the State=s witness
commented on appellant=s post-arrest silence.  According to
appellant, the State used appellant=s silence against
him to prove guilt.  During the State=s direct
examination of Officer Anderson the following exchange occurred:

Q:      What did you do after you made the arrest on
this case, Officer Anderson?

A:      I had both the individuals transported to
the jail where I conducted an interview.  And Mr. McClain did not want to
speak to me.

MR. RAMSEY [Appellant=s Attorney]:          Excuse me, your Honor.  I
object to any - -

THE COURT:          Sustained.

Strike that last answer.  

(Emphasis added).

1.       Analysis








To preserve error for our appellate review, appellant must
have made a timely, specific objection.  Tex. R. App. P. 33.1(a); Turner v.
State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991).  In addition, appellant
must have obtained an adverse ruling from the trial court.  Turner, 805
S.W.2d at 431; see Caron v. State, 162 S.W.3d 614, 617 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (citing Brooks v. State, 642 S.W.2d 791, 798 (Tex.
Crim. App. 1982)) (stating the proper method of pursuing an objection until an
adverse ruling is to object, request an instruction to disregard, and move for
a mistrial).  Here, assuming appellant=s objection was
specific enough to make the trial court aware of his complaint, the trial court
sustained appellant=s objection.  The trial court then, sua
sponte, instructed that the answer be stricken; however, appellant never
requested an instruction to disregard and never moved for a mistrial.  Thus,
appellant received all of the relief requested.  Failure to request further
relief after an objection is sustained preserves nothing for review.  Caron,
162 S.W.3d at 617; see Badall v. State, 216 S.W.3d 865, 872 (Tex. App.CBeaumont 2007,
pet. ref=d) (holding
appellant waived his arguments regarding a violation of his right to remain
silent because he failed to pursue his objections until he received an adverse
ruling).  We overrule appellant=s first issue.

B.      Is the
Evidence Legally and Factually Sufficient?

In his second issue, appellant argues the evidence is
legally and factually insufficient to support a conviction for theft in excess
of $20,000.  According to appellant, the indictment alleged appellant Aunlawfully,
appropriate[d] by acquiring and exercising control over property, namely, TWO
GUITARS, ONE MONITOR, THREE NAVITAR LENSES, AND THREE PROJECTORS.@  (Emphasis
added).  However, the jury charge alleged appellant Aunlawfully, appropriate[d]
by acquiring or exercising control over property, namely, two guitars, one
monitor, three projectors, or three Navitar lenses.@  (Emphasis
added).  Appellant argues because the jury charge alleged the stolen property
in the disjunctive, instead of the conjunctive like the indictment, the State
was required to prove each alleged piece of stolen property was valued in
excess of $20,000.  Appellant claims the State raised its burden of proof by
allowing the jury charge to state the stolen property in the disjunctive. 
Thus, according to appellant, the evidence at trial is legally and factually
insufficient to support his conviction because none of the witnesses valued a
single piece of stolen property over $20,000.

 

 








1.       Standard
of Review

In a legal sufficiency review, we view all the evidence in
the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789, 61 L. Ed. 2d. 560 (1979); Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim.
App. 2005).  The jury, as the sole judge of the credibility of the witnesses,
is free to believe or disbelieve all or part of a witness=s testimony.  Jones v. State,
984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  The jury may reasonably infer facts
from the evidence presented, credit the witnesses it chooses to, disbelieve any
or all of the evidence or testimony proffered, and weigh the evidence as it
sees fit.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
Reconciliation of conflicts in the evidence is within the jury=s discretion, and
such conflicts alone will not call for reversal if there is enough credible
evidence to support a conviction.  Losada v. State, 721 S.W.2d 305, 309
(Tex. Crim. App. 1986).  We
do not engage in a second evaluation of the weight and credibility of the
evidence, but only ensure the jury reached a rational decision.  Muniz v.
State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); Harris v. State,
164 S.W.3d 775, 784 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).  Inconsistencies in the evidence
are resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000). 








In a
factual sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  Id. at 731.
 First, when considered by itself, evidence supporting the verdict may be
so weak the verdict is clearly wrong and manifestly unjust.  Id.  Second,
where the evidence both supports and contradicts the verdict, the contrary
evidence may be so strong that the beyond a reasonable doubt standard could not
have been met.  Id.  In conducting a factual sufficiency review, we must
employ appropriate deference so we do not substitute our judgment for that of
the fact finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996).  Our analysis must consider the evidence appellant claims is most
important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 

We determine the sufficiency of the evidence based on a
hypothetically correct jury charge for the case.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997).  A hypothetically correct jury charge
is Aone that
accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State=s burden of proof
or unnecessarily restrict the State=s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.@  Id.  

2.       Analysis








Although appellant cites no authority to support his
assertions, we will address his arguments briefly.  First, in a theft case, the
allegedly stolen property must be generally described in the indictment and
conforming evidence must be adduced.  Johnson v. State, 187 S.W.3d 591,
604 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d); see Lehman
v. State, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990).  However, it is proper
for the jury to be charged in the disjunctive even when the indictment uses the
conjunctive.  Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App.
1991); see Warren v. State, 810 S.W.2d 202, 203 (Tex. Crim. App.
1991) (stating in theft case that the jury charge could have properly alleged
the stolen items in the disjunctive); Johnson, 187 S.W.3d at 604B05 (disagreeing
with appellant=s argument that the use of the disjunctive term Aor@ between the
complainants= names in the jury charge required the State to prove
appellant stole at least $20,000 from only one particular complainant, and
holding, instead, the phrasing of the jury charge in the disjunctive did not
change what the State had to prove); Croft v. State, 148 S.W.3d 533, 546
(Tex. App.CHouston [14th Dist.] 2004, no pet.) (holding it is
proper to charge the jury in the disjunctive even if the indictment charged in
the conjunctive).  Therefore, we conclude even though the indictment used the
conjunctive, it was proper for the jury charge to allege appellant Aunlawfully,
appropriate[d] by acquiring or exercising control over property, namely, two
guitars, one monitor, three projectors, or three Navitar lenses.@  We conclude the
language in the jury charge did not require the State to prove each alleged
piece of stolen property was valued in excess of $20,000.  Accordingly, the
jury was required to determine that appellant stole enough of the property
alleged in the indictment to satisfy the $20,000 or more but less than $100,000
allegation.  

During trial, Guidry testified as an expert for the State. 
In his opinion, the fair market value of each projector at the time it was
stolen was between $9,500 and $10,000.  Guidry also testified that, at the time
of trial, projectors with the same model number were priced at $8,662 online. 
Furthermore, Guidry testified he received a second opinion on the projectors= value from a
person he dealt with on a regular basis at Projector Warehouse.  According to
Guidry, that person valued the projectors anywhere from $9,500 to $12,000 each.
       Hodge also testified as an expert for the State, and according to him,
his custom-made guitar had a fair market value of $1,800 to $2,500 at the time
it was stolen, and he testified his 1971 Fender had a fair market value of $850
to $1,200 at the time it was stolen.  Lastly, the State=s third expert,
Hall, testified the stolen monitor=s fair market
value at the time it was stolen was between $650 and $700.  On the other hand,
Newlin, appellant=s expert, testified that, at the time the
property was stolen, each projector had a value of $3,600 and the LCD monitor
had a value of $600.  








When determining the sufficiency of the evidence, the jury
is the sole judge of the facts, the credibility of the witnesses, and the
weight to be given the evidence.  Wyatt v. State, 23 S.W.3d 18, 30 (Tex.
Crim. App. 2000); Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  In addition, the jury may believe or
disbelieve all or part of any witness=s testimony.  Jones
v. State, 984 S.W.2d at 258.  Reconciliation of conflicts in the evidence
is within the jury=s discretion, and such conflicts alone
will not call for reversal if there is enough credible evidence to support a
conviction.  Losada, 721 S.W.2d at 309.  Thus, the jury was entitled to
believe Guidry=s testimony that the value of each stolen projector
was between $9,500 and $10,000.  This testimony alone satisfies the $20,000
allegation in appellant=s indictment and jury charge.

Viewing the evidence in the light most favorable to the
verdict, we hold a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  See Salinas, 163 S.W.3d at 737.  Thus, the evidence
is legally sufficient to support appellant=s conviction.  Viewing the evidence in a neutral
light, we
hold the evidence supporting the verdict is not so weak that the verdict is
clearly wrong and manifestly unjust; nor was the contrary evidence so strong
the beyond a reasonable doubt standard could not have been met.  See Prible,
175 S.W.3d at 730B31.  Thus, the evidence is factually
sufficient to support appellant=s conviction.  We overrule appellant=s second issue.

Conclusion

 

Having overruled appellant=s two issues, we affirm the trial
court=s judgment.

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed November 13, 2008.

Panel consists of
Justices Anderson, Frost, and Senior Justice Hudson.*

Do Not Publish C Tex. R. App. P. 47.2(b).    









[1]  The Church representatives also originally thought
the thief stole three Navitar lenses; however, it was later discovered that the
three lenses were not stolen.





*  Senior Justice J. Harvey Hudson sitting by
assignment.