**Affirmed and Memorandum Opinion filed April 25, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00430-CR

---

## PAUL  ANTHONY WELCH, Appellant,

## V.

## THE STATE OF TEXAS, Appellee.

---

### On Appeal from the 411th District Court
### Polk County
### Trial Court Cause No. 21967

---

## M E M O R A N D U M   O P I N I O N

In two issues, appellant Paul Anthony Welch appeals his conviction for attempted capital murder of multiple persons. We affirm.

I

Paul and Vickie Welch entered into a valid, common-law marriage in

November of 2008,[1] and they broke up in July of 2010. Although Vickie moved out of Paul's house, they never sought to dissolve their marriage legally. That same month, Paul began dating Shantele Holmes. She moved into his house in August, and they formally married the following February. None of the parties realized Paul was still legally married to Vickie, which rendered his marriage to Shantele void.[2]

By July of 2011, Paul and Shantele were attempting to obtain a divorce, and Shantele was living with her mother, Anice Holmes. On the night of July 24, Paul drove to Holmes's residence in his parents' Mercury Grand Marquis. As he neared the house, Shantele was standing on the front porch with Daniel Cain, Nicona Williams, and Sergeant Jay Burks—a Polk County reserve deputy sheriff who had been notified that Paul was heading to Holmes's residence and was potentially dangerous. Shantele, Williams, and Burks all recognized the vehicle as Paul's parents' car, but it was too dark to identify Paul as the driver. The car stopped in the middle of the road, and the driver began rapidly firing a shotgun at the residence from inside the car. Burks quickly drew his weapon and began returning fire as he ran into the front yard and dropped to the ground for cover. When he looked up, the car was driving away. Later that night, Paul went to Vickie's house and told her "the law was looking for him" because he had gone to the residence where Shantele was staying and shot a horse trailer on the property. After investigating the scene and speaking to the witnesses, Captain Rickie Childers and Lieutenant Anthony Lowrie of the Polk County Sheriff's Department obtained a

---

[1] Texas law recognizes an informal marriage if (1) the man and woman agree to be married; (2) after the agreement, they lived together in Texas as husband and wife; and (3) they represented to others that they were married. *See* Tex. Fam. Code § 2.401(a)(2).

[2] *See* Tex. Fam. Code § 6.202(a) ("A marriage is void if entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse.").

warrant for Paul's arrest. The next morning, the officers were driving around areas where Paul was known to be when they passed him driving the Grand Marquis. They immediately pulled him over and, not knowing whether he was still armed, held him at gunpoint as they ordered him to get out of the car and lie down on the ground. Paul complied. Childers handcuffed him and gave him his *Miranda* warnings. The officers then stood Paul up, and he asked why he was being arrested. When Childers told him it was in relation to the shooting at Holmes's residence, Paul said he had nothing to do with it. Lowrie, who had walked around to the passenger's side of the vehicle, noticed a bullet hole in the front fender and asked Paul how it got there. Paul denied that there were any bullet holes in the car, so Childers led Paul over to where Lowrie stood. When Paul saw the hole in the fender, he put his head down and said, "I wasn't trying to hurt nobody. I was just trying to scare them."

A jury convicted Paul of attempted capital murder of multiple persons and assessed his punishment at fifty years' imprisonment in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine. On appeal, Paul argues the trial court erred by (1) denying his motion to suppress his statement to Childers and Lowrie, which was inadmissible under article 38.22 of the Code of Criminal Procedure; and (2) refusing to uphold Vickie's testimonial privilege and compelling her to testify about a confidential conversation she and Paul had on the night of the offense. We affirm.

II

In his first issue, Paul argues the trial court erred by denying his motion to suppress his statement to Childers and Lowrie. Article 38.22 operates to bar those oral statements made in response to custodial interrogation where the accused has not been given adequate constitutional warnings and the statement is not preserved

under specified procedural safeguards. *See* Tex. Code Crim. Proc. art. 38.22, § 3. "Custodial interrogation" has been defined as express questioning or words and actions (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Badall v. State*, 216 S.W.3d 865, 869 (Tex. App.—Beaumont 2007, pet. ref'd). Thus, oral statements of guilt are admissible if they are not the result of custodial interrogation and are given freely, voluntarily, and without compulsion or persuasion. *Escamilla v. State*, 143 S.W.3d 814, 824–25 (Tex. Crim. App. 2004); *Shiflet v. State*, 732 S.W.2d 622, 624 (Tex. Crim. App. 1985).

At a hearing on a motion to suppress, the trial judge is the sole trier of fact of the credibility of the witnesses as well as the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The determination of whether a statement is voluntary is a mixed question of law and fact. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000). We give almost total deference to a trial court's ruling on mixed questions of law and fact if, as here, the ultimate resolution of the question turns on an evaluation of credibility and demeanor. *Id.*; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

During the hearing on Paul's motion to suppress, Childers testified that although Paul made the statement while in custody, it was not in response to questioning by the police. According to Childers, Lowrie asked Paul where he got the bullet hole in the car, and Paul said, "There ain't no bullet hole." Lowrie continued, "There is one right here in the front passenger fender," to which Paul replied, "No, there is not." After Childers walked Paul around the car to where Lowrie stood, Paul "looked at [the bullet hole] and put his head down and says [sic] 'I wasn't trying to hurt nobody. I was just trying to scare them.'"

4

For his part, Paul testified, "I was shocked there was a bullet hole in the car. . . . So I didn't say anything. Then [the officers] went back to questioning me." It was only in response to those questions, Paul insisted, that he admitted his guilt.

The State points to *Wiley v. State*, in which the appellant claimed the trial court erred in admitting post-arrest, unrecorded statements he made to the police in violation of article 38.22. 699 S.W.2d 637, 638 (Tex. App.—San Antonio 1985, pet. ref'd). In that case, police officers questioned the appellant about a sexual assault, and he denied any involvement. *Id.* When the officers then searched the appellant's room, pursuant to his invitation to do so, they found bloodied clothes belonging to the appellant and a knife with fresh blood on it. *Id.* The officers showed the clothing and the knife to the appellant, and the appellant, without any further questioning, confessed his guilt. *Id.* The court of appeals held that the trial court did not abuse its discretion by admitting the statement because "[t]he police merely showed the evidence to appellant, who, although advised of his right to remain silent, admitted his involvement in the assault. Consequently, the statement was not inadmissible under article 38.22." *Id.* at 639.

The facts of this case are similar to those in *Wiley*: After advising Paul of his right to remain silent, the police showed him the bullet hole, and, without any additional questioning by the police, Paul confessed his guilt. Therefore, we conclude the trial court did not abuse its discretion by ruling that Paul's statement did not stem from custodial interrogation and was thus not excluded under article 38.22. Accordingly, we overrule Paul's first issue.

III

In his second issue, Paul argues that because he and Vickie have been legally married since 2008, the trial court erred by denying Vickie's confidential-communication privilege during trial and requiring her to testify about Paul's

5

confession to her. Specifically, Paul argues the exception for crimes against a member of the household did not apply because Shantele moved out of his house prior to the offense. The State contends that the trial court appropriately relied on the Family Code's definition of "member of the household" to conclude that the exception applied.

The confidential-communication privilege allows a spouse to refuse to disclose, and to prevent the other spouse from disclosing, a confidential communication made to the other spouse while they were married. Tex. R. Evid. 504(a). This privilege does not exist, however, in a proceeding in which the charged offense, if proved, is a crime against any member of the household of either spouse. *Id.* 504(a)(4)(C). The phrase "member of the household" is not defined in the rules of evidence, but it is defined in the Family Code for purposes of a protective order. Under the Code, "household" is defined as "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other," *see* Tex. Fam. Code § 71.005, and the phrase "member of a household" includes a person who previously lived in the household, which would cover Shantele. *See id.* § 71.006. The Austin Court of Appeals has held that it is appropriate to use the Family Code definitions to determine the scope of Rule 504 "because the Family Code's purpose of preventing 'family violence' is congruent with the purpose of the privilege's exceptions: to prevent assaults against children, the aged, and any other household member, whether or not related to either spouse." *Riley v. State*, 849 S.W.2d 901, 903 (Tex. App.—Austin 1993, pet. ref'd). We agree.

The trial court correctly held that because Paul was charged with a crime against Shantele, who was a member of his household, the confidential-communication privilege did not apply. We overrule Paul's second issue.

\* \* \*

The judgment of the trial court is affirmed.


/s/    Jeffrey V. Brown
        Justice


Panel consists of Chief Justice Hedges and Justices Brown, and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).