In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00080-CR
_____

JOHNNY RAYMOND WHEELER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 12-03-03053 CR

**MEMORANDUM OPINION**

The jury convicted Johnny Raymond Wheeler of aggravated assault with a deadly weapon and sentenced him to twelve years in prison. Wheeler appeals the trial court's judgment and in one issue contends that the trial court erred in allowing the prosecutor's improper jury argument, which affected his substantive rights. We affirm the trial court's judgment.

## Background

Wheeler was involved in a confrontation with his ex-girlfriend and her new boyfriend. Wheeler drew a gun and started screaming vulgarities. The ex-girlfriend testified that she heard a gunshot and knew that someone had been shot. The boyfriend testified that Wheeler shot him in his shoulder. The ex-girlfriend called the police and then hid under the house for her own safety.

Wheeler testified he went to the home that night to get some of his belongings. According to Wheeler, when he approached the door, the boyfriend tried to stab him with a screwdriver. Wheeler denied that he had a gun that night and denied shooting the victim. Wheeler testified that the boyfriend had the gun and pointed it in Wheeler's face. According to Wheeler, when he tried to wrestle the gun away from the boyfriend, the gun discharged, and the victim accidentally shot himself in the arm. Wheeler testified that he left the scene because he was scared the boyfriend was going to come back and shoot him. Police officers were unable to recover a gun from the scene.

Wheeler was charged with shooting the boyfriend and threatening the ex-girlfriend with a deadly weapon. The jury convicted Wheeler of aggravated assault with a deadly weapon for the shooting, but found him not guilty of aggravated assault against the ex-girlfriend.

2

Ryan Simpson, a police officer, was called to aid in the search for Wheeler after he fled the scene. On his way to the scene, Officer Simpson was involved in a vehicular accident and sustained serious injuries. During closing argument of the punishment phase of the trial, the prosecutor argued to the jury that there are consequences from our actions and Wheeler should be held accountable for his actions as the cause of the accident that injured Officer Simpson that evening on the way to the scene of Wheeler's crime. Counsel for Wheeler objected to the jury argument, but the trial court overruled his objection.

## Jury Argument

### Preservation of Error

The State argues that Wheeler failed to preserve his complaint by failing to object each time the challenged evidence was offered. To preserve error for appellate review on an improper jury argument, a defendant must make an objection, and then must pursue that objection to an adverse ruling. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Badall v. State*, 216 S.W.3d 865, 872 (Tex. App.—Beaumont 2007, pet. ref'd); *see* Tex. R. App. P. 33.1(a)(1)(A). After reviewing the record, we conclude that Wheeler did object to the State's reference to the testimony regarding the officer's accident during the State's

3

closing argument, and the trial court overruled his objection. Thus, Wheeler preserved his improper jury argument issue for review. *See* Tex. R. App. P. 33.1.

**Improper Jury Argument**

Wheeler contends that the State, during the punishment phrase of the trial, exceeded the permissible scope for closing argument when the State argued evidence outside the record and asked the jury to give Wheeler a higher sentence to compensate for the injuries received by one of the responding officers who had been involved in a vehicular accident the night James was shot. Wheeler contends that the State essentially accused him of indirectly causing the officer's vehicular accident and his subsequent injuries because the officer was en route to the scene of the offense when the accident occurred. He further contends the State urged the jury to punish Wheeler for the injuries received by the officer and not for the crime for which he had been convicted.

Proper jury argument generally falls within four areas: "(1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; [or] (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). "The arguments that go beyond these areas too often place before the jury unsworn, and most times believable, testimony of the attorney." *Alejandro v. State*, 493 S.W.2d 230, 232 (Tex. Crim.

4

App. 1973). Error exists when facts not supported by the record are interjected in the argument. *Brown*, 270 S.W.3d at 570. A prosecutor is permitted to draw from all the facts in evidence to make reasonable, fair, and legitimate inferences. *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (en banc) (per curiam).

Wheeler argues that the prosecutor's statements regarding what had happened to an officer responding to the scene of the crime that night amounted to improper jury argument because it failed to meet any of the four permissible areas of argument. During closing statement, the State argued:

> [THE STATE:] It's not just about James. It's about how every decision that we make has a consequence. And look at what happened to Ryan Simpson that night. You know, when Ryan left on March 18th, 2012, to go out to that scene --

> [THE DEFENSE]: I didn't object, but I'm going to have to object to the plea for the officer. Johnny is not responsible for the way he drives or not being cautious enough. I object to the whole reference that Johnny was somehow responsible for the wreck that happened.

> THE COURT: It's argument. I'll allow it. Overruled.

> [THE STATE]: When we make decisions there may be consequences that we can't foresee and we can't predict. But when things happen and when there's that result, we have to live with those consequences. And when Ryan left that night he probably thought it was just another night on the job, going out there to do what he's supposed to do. We don't have to wonder if we're going to come home at the end of the day. Most of our husbands and wives kiss us good-bye. They don't have to think, Am I ever going to see them again? Ryan Simpson's wife does. Because of guys like him

5

(indicating). He didn't know that to this day he would still be relearning how to walk or he would still be in surgery after surgery.

While portions of the State's argument referred to evidence outside the record, other portions of the State's argument are found in the record. During the punishment phase of trial, Wheeler called his mother to testify on his behalf. When the State cross-examined Wheeler's mother, the following testimony developed without objection from Wheeler's trial counsel:

Q. And did you know that also on that night a police officer with Splendora Police Department was responding to that call and he was in a car accident?

A. Actually, I did.

Q. Okay. And his name was Ryan Simpson, wasn't it?

A. I'm not sure of that officer's -- I wasn't told of the officer's name of the wreck. I did have a conversation with an officer down the street from Johnny and Rebekah's and was told there was an accident.

Q. And he was responding to your son's crime. Do you know that?

A. I've been told that.

Q. And it took them 30 minutes to pry him out of the car.

A. I've been told that.

Q. And that he had to be Life Flighted from that accident?

A. I've been told that.

Q. Did you know that he was in critical condition?

A. Yes, I did. I did read the newspaper about the truck and everything.

Q. And that he was unconscious for a week?

A. Yes, ma'am.

Q. Do you know that he has memory loss from that?

A. Yes, ma'am.

Q. He has brain damage?

A. (Nodded head).

6

Q. And did you know that right now Ryan Simpson is still relearning how to walk from that accident?

A. Yes, ma'am. Contrary to what people believe, even though --

Q. That wasn't my question. Do you know that he is still relearning how to walk?

A. No.

Q. And did you know that right now he can't be a police officer because he doesn't have the mental and physical capacity to do his job?

A. No.

Q. And were you aware he wanted to testify this morning, but he's in surgery again because of that accident?

A. No, I was not aware of that.

Q. Do you know that he's only 28 years old?

A. Yes.

Q. And that he had a family?

A. I understand that.

Q. And would you say that, you know, the decisions that we make that they have consequences we may not even realize at the time?

A. Yes. The decisions he made for himself had consequences, that is true.

In its brief to this Court, the State contends, "Plainly, the State intended this line of questioning to suggest that [Wheeler] was indirectly responsible for Simpson's injuries, since Simpson was driving at a high rate of speed in order to respond to the scene where [Wheeler] shot James." The State contends that the prosecutor's argument amounted to a proper summary of this testimony. The portion of the State's argument that an officer had been involved in an accident that night while responding to a call may be characterized as a summary of the evidence. However, the State went beyond summarizing evidence when the prosecutor went on to

7

argue that the officer had a wife who had to wonder each night if her husband would come home and that the officer had to endure surgery after surgery because of the accident. There is no evidence in the record to support these statements. Nor is there evidence in the record to support an argument that the officer was driving at a high rate of speed to get to the scene of the crime.

The State argues that the prosecutor drew a reasonable inference from the evidence in her closing argument, "namely the inference that the appellant should be held responsible for the unforeseen-but-foreseeable consequences of his actions, such as the possibility that officers would be injured responding to a violent situation created by [Wheeler]." However, there is nothing in the record to support that Wheeler was legally responsible for the officer's vehicular accident or his resulting injuries. During the guilt or innocence phase of trial, one of the responding officers testified that while investigating the scene of the incident involving Wheeler, he heard a crash down the road. He testified that he went to where he heard the crash and discovered that Officer Simpson was involved in an accident with an 18-wheeler tractor-trailer while responding to a call to assist in the search for Wheeler. The State asked the officer as follows:

> Q. You're not trying to say that Johnny Wheeler caused this wreck, are you?
> A. No, I'm not.

Q. It's just something that happened while people were looking for the defendant?
A. Yes.

After reviewing the State's entire closing argument and the record on appeal, we conclude Wheeler's objection to the State's closing argument was proper. The State's argument exceeded the evidence at trial and made deductions that were not supported by or reasonably based on the evidence. Because the trial court erred by overruling Wheeler's objection, we must consider whether the trial court's failure to sustain the objection requires reversal as to punishment.

**Harmless Error Analysis**

The State's improper argument in this case must be disregarded unless it is shown that the error affected Wheeler's substantial rights. Improper jury argument is considered a non-constitutional error. *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011); *Brown*, 270 S.W.3d at 572. Rule 44.2(b) of the Texas Rules of Appellate Procedure governs the harm analysis for non-constitutional error and provides that any "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b); *see also Brown*, 270 S.W.3d at 572. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). To determine whether appellant's

9

substantial rights were affected, we balance the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's comment), any curative measures taken to cure the misconduct, and the certainty of punishment assessed absent the misconduct (the likelihood of the same punishment being assessed). *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc) (applying balancing factors to punishment proceedings in a non-capital case); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (en banc).

When considering the severity of the prosecutor's misconduct, "we must assess 'whether [the] jury argument is extreme or manifestly improper [by] look[ing] at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial.'" *Brown*, 270 S.W.3d at 573 (quoting *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (en banc); *Mosley*, 983 S.W.2d at 259-60.

In considering the first *Mosley* factor, we note that the prosecutor emphasized that one of the consequences of Wheeler's actions that night was the officer's accident. The prosecutor's comments regarding the officer's injuries were not brief, but rather the prosecutor spent nearly one-third of her closing argument discussing the officer. However, as detailed above, during both phases of the trial,

10

the jury heard some evidence related to the officer's vehicular accident. As such, the officer's injuries would have already been on the minds of the jurors given the prior evidence available for their consideration.

In considering the second *Mosley* factor, we note that the trial court overruled defense counsel's objection, so there were no curative instructions given.

In considering the third *Mosley* factor, based on our review of the entire case against Wheeler, it is foreseeable that Wheeler would have received the same punishment absent the prosecutor's misconduct. Wheeler received twelve years imprisonment for aggravated assault with a deadly weapon. The range of punishment available to the jury was two to twenty years imprisonment and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. §§ 12.33, 22.02(a)(2) (West 2011). The jury was properly instructed on the range of punishment and instructed to consider "all the facts shown by the evidence admitted into evidence in this case[.]" The trial court instructed the jury that if it found evidence that Wheeler had participated in any crime or bad act other than the offense for which he was found guilty, the jury was not to consider such crimes or bad acts unless shown beyond a reasonable doubt by the evidence that Wheeler committed those acts or could be held criminally responsible for committing those acts.

11

During the punishment phase of trial, the jury heard evidence of Wheeler's prior offenses and convictions. In 2002, Wheeler pleaded guilty to possession of marijuana. Also in 2002, Wheeler pleaded guilty to evading arrest. In 2008, Wheeler received deferred adjudication for aggravated assault with a deadly weapon (not a firearm). In 2011, Wheeler pleaded guilty to driving while intoxicated. In 2012, Wheeler's probation was revoked, and he was sentenced to thirty days in county jail for the DWI conviction. The jury heard evidence from James regarding the impact his injuries have made on his life.

Although the State urged the jury to assess a maximum prison sentence of twenty years, the jury assessed punishment at twelve years' confinement. Based on the circumstances surrounding this crime and Wheeler's past criminal history, the jury could have reasonably sentenced Wheeler to twelve years without considering the improper argument. On this record, we cannot determine that any improper jury argument adversely contributed to the jury's assessment of punishment. In light of the record and in balancing the requisite factors identified above, we conclude any error was harmless. We overrule Wheeler's sole issue on appeal. The judgment of the trial court is affirmed.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on June 25, 2014
Opinion Delivered January 14, 2015
Do not publish

Before Kreger, Horton and Johnson, JJ.