IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00221-CR

 

Jacob Rufus Amspacher,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the County Court at Law

Coryell County, Texas

Trial Court No. 08-58049

 



Opinion










 

            Jacob Rufus Amspacher appeals a
conviction by a jury for Illumination of Aircraft by Intense Light.  Tex. Pen. Code Ann. § 42.14 (Vernon Supp. 2008).   Amspacher contends that the evidence was factually insufficient for
the jury to have found him guilty and that the trial court erred in allowing testimony
regarding his conduct and statements when he was approached by law
enforcement.  Because we find that the evidence was factually sufficient and
that the trial court did not abuse its discretion in the admission of evidence,
we affirm the judgment of the trial court.




Factual Sufficiency

In a factual sufficiency review, we view the
evidence in a neutral light and ask whether the evidence supporting the verdict
is so weak or so against the great weight and preponderance of the evidence as
to render the verdict manifestly unjust.  Steadman v. State, 280 S.W.3d
242, 246 (Tex. Crim. App. 2009); Grotti v. State, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008).  Although a factual sufficiency review authorizes us, to a very
limited degree, to act as a “thirteenth juror,” we must nevertheless give the
jury's verdict a great degree of deference.  Watson v. State, 204 S.W.3d
404, 416-17 (Tex. Crim. App. 2006).  The fact-finder alone determines what
weight to place on contradictory testimonial evidence because that
determination depends on the fact-finder's evaluation of credibility and
demeanor.  See Tex. Code Crim. Proc. Ann. art. 36.13 and 38.04 (stating that
the jury is the exclusive judge of the facts and of the weight given to
testimony); Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App.
2008).  We afford almost complete deference to a jury's decision when that
decision is based upon an evaluation of credibility as the jury is in the best
position to judge the credibility of a witness because it is present to hear
the testimony, as opposed to an appellate court which relies on the cold
record.  Lancon, 253 S.W.3d at 705.  See also Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

A “high level of skepticism about the jury's
verdict” is required before we may reverse due to factual insufficiency.  Watson,
204 S.W.3d at 417.  We may not find the evidence to be factually insufficient
merely because there are “reasonably equal competing theories of causation.”  Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001).  Further, a factual
sufficiency reversal certainly may not occur when the evidence actually
preponderates in favor of conviction. Watson, 204 S.W.3d at 417.  Before
reversing a conviction on the basis of factual insufficiency, we must detail
all the relevant evidence and must explain in exactly what manner the evidence
is factually insufficient.  Watson, 204 S.W.3d at 414.

Illumination of Aircraft by Intense Light

            Section 42.14 of the Texas Penal Code became effective on September
1, 2007.  No other Court has discussed or construed this statute since its
inception.  It states in relevant part as follows:

(a)              
A person commits an offense
if:


   (1) the person intentionally directs a light from a
laser pointer or other light source at an aircraft; and


   (2) the light has an intensity sufficient to impair the
operator's ability to control the aircraft.

 

….


(c) An offense under this section is a Class C misdemeanor unless the
intensity of the light impairs the operator's ability to control the aircraft,
in which event the offense is a Class A misdemeanor.

 

Tex. Pen. Code Ann. §42.12 (Vernon Supp. 2008).

            Amspacher complains that the evidence
was factually insufficient for the jury to find that: (1) he was the person
spotlighting the aircraft; (2) he intentionally pointed the light at the
aircraft; (3) the light was intense enough to impair the operator’s ability to
control the aircraft; (4) the operator’s ability to control the aircraft was
impaired.




The Facts

            At night on April 1, 2008, a pilot and his trainee were flying an
Apache helicopter over the west side of Fort Hood, Texas, when they received a
call that another aircraft was being spotlighted.  The pilot flew toward Pidcoke, Texas, when he and his trainee noticed that they were being spotlighted as well. 
The pilot had an infrared sight device over his right eye and his left eye was
unobstructed.  The pilot and his trainee were able to fix their infrared
sensors on the location of the spotlight and the person in the area.  The pilot
believed that he may have seen the person go behind his residence, but was not
certain of this.  The pilot and his trainee maintained that location until law
enforcement arrived in Pidcoke, and then they directed the trooper to the
location from where they had seen the spotlight originating.

            The pilot stated that the light caused
“flash blindness,” which impaired his night vision.  The incident with the
spotlighting caused the pilot and his trainee to abandon their mission.  While
the pilot did not at any time lose control of the helicopter and was in no
danger of crashing, he stated that the light did interfere with his ability to
observe his surroundings and to fly safely.  For example, the pilot stated he
was unable to see wires and lights of towers as well as any other aircraft
potentially in the area, which created an unsafe situation.

            The trooper that first arrived at
Amspacher’s residence also observed that a spotlight was shone on an aircraft
as he was responding to the call.  The spotlight went off, and the trooper did
not see it again.  He could not tell if the spotlight originated from the east
or west side of FM 116.  Upon his arrival, the trooper found Amspacher yelling
at the helicopter with a camcorder pointed at it.  The trooper did not search Amspacher
and did not locate a spotlight; however, Amspacher was the only person at the
scene.  Amspacher refused to identify himself or produce identification.

            A Coryell County deputy and a reserve
deputy arrived and found Amspacher to be aggressive and irritated.  He was
swearing and talking about how he was not in Nazi Germany, referenced the
Gestapo, and that he was not in Russia.  The reserve deputy heard Amspacher
stating that he was upset that the Army could fly over his property, shine
lights, and make noise.  There were two other deputies that arrived and none of
them located a spotlight that night.  Fort Hood then let them know that they
would not be coming to arrest Amspacher, and so the deputies departed without
arresting Amspacher at that time.

Identity

            We cannot say that the evidence is
factually insufficient to find Amspacher guilty of being the person who
illuminated the aircraft.  The pilot of the Apache stated that he and his
trainee were able to stay focused on their target, who was the person shining
the spotlight.  The pilot was able to lead law enforcement to the source of the
light, which was where Amspacher was located.  There was no one else at the
location with Amspacher.  There was a break in-between when the spotlight was
extinguished and the arrival of law enforcement.  There was no spotlight
located at the scene.  When Amspacher was located by law enforcement, he was
using a camcorder and was visibly and verbally angry.  Amspacher made comments
that he was upset about the military flying over his residence.  The jury, as
the factfinder, was able to observe the credibility of the witnesses and
determined that Amspacher did indeed illuminate the helicopter.

Intent  

            Amspacher contends that the evidence
was also factually insufficient to find that he intentionally illuminated the
aircraft.  The relevant evidence of intent according to Amspacher was his
comments regarding his hostility to the military flying over or near his
residence, his general demeanor of being angry and swearing, his refusal to
identify himself to law enforcement upon request, and that he was using a
camcorder late at night in a location where it was dark presumably to videotape
the Apache’s flight.  Amspacher contends that the jury could have inferred from
the possession and use of the camcorder that he was reacting to the presence of
the helicopter and gathering evidence for a later complaint to the Army. 
However, we may not find the evidence factually insufficient simply because
there may be competing theories of causation.  Goodman, 66 S.W.3d at
287.  This contention does not give us a “high degree of skepticism” about the
jury’s verdict regarding Amspacher’s intent to illuminate the aircraft.  See
Watson, 204 S.W.3d at 417.

Intensity

            Amspacher contends that because no expert testimony was offered
regarding the actual intensity of the light that the evidence is factually
insufficient for the jury’s finding that the intensity of the light was
sufficient to impair the operator’s ability to control the aircraft.  We do not
agree that expert testimony is required to determine that the light was intense
enough to impair the operator’s ability to control the aircraft.  Lay witnesses
are allowed to give opinions that are: “(a) rationally based on the perception
of the witness, and (b) helpful to a clear understanding of the witness’
testimony or the determination of a fact in issue.”  Tex. R. Evid. 701.  

            Amspacher does not explain why he
contends that expert testimony would be necessary.  Further, the trooper who
observed the spotlight from afar testified that the light was a concentrated,
intense beam and was different from the light that was shining down from the
helicopter.  The pilot, who had accumulated over 2,700 hours of flight time in
helicopters and airplanes and was a flight instructor for the military, also
testified that the light caused “bleaching out” of the rhodopsin in the eyes
which affects night vision and makes it difficult to see with the naked eye at
night.  We find this evidence is factually sufficient for the jury to have
found that the light was intense enough to impair the operator’s ability to
control the aircraft.

Impairment and Ability to Control 

            Amspacher contends that the evidence was factually insufficient for
the jury to determine that the pilot was actually impaired and also that any
impairment affected his ability to control the helicopter.  In order to decide
this issue we must first determine what is meant by the language used in the
statute.  We must establish and apply the legislature’s intent that is
expressed by the language of the statute.  State v. Shumake, 199 S.W.3d
279, 284 (Tex. 2006).  

To interpret the use of “impair” and “control” in
section 42.14(a)(2), “we necessarily focus our attention on the literal text of
the statute.”  Williams v. State, 270 S.W.3d 140, 146 (Tex. Crim. App.
2008) (citing Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App.
1991)).  Because “every word in a statute has been used for a purpose,” “each
word, phrase, clause, and sentence should be given effect if reasonably
possible.”  Williams, 270 S.W.3d at 146 (citing State v. Hardy,
963 S.W.2d 516, 520 (Tex. Crim. App. 1997)).  We “first attempt to interpret
the statute based on the plain meaning of the words used.”  Williams,
270 S.W.3d at 146 (citing Olivas v. State, 203 S.W.3d 341, 345 (Tex. Crim. App. 2006)).  When the statute does not define certain terms, we turn to the
common, ordinary meaning of that word.  Id.  Webster's Dictionary
defines “impair” as:  “to
damage or make worse by or as if by diminishing in some material respect.”  Merriam-Webster’s
Collegiate Dictionary 580 (10th
Ed.).  “Control” is defined as: 

1.(a) : to check, test, or verify by evidence or
experiments;

   (b) : to incorporate suitable controls in;

2.(a) : to exercise restraining or directing
influence over : regulate; 

   (b) : to have power over : rule; or

   (c) : to reduce the incidence or severity of
especially to innocuous

           levels.

 

Merriam-Webster’s
Collegiate Dictionary 252 (10th
Ed.).

            The pilot testified that the light did
impair him.  When the helicopter was illuminated, it became necessary to change
what they were doing because it was such a large distraction.  In his statement
to law enforcement near the time of the incident, the pilot stated that although
he did not feel the safety of his crew or his aircraft was in danger, the light
was bright enough that it impaired and affected normal flight operations.  The
light came from the right side of the helicopter, which was the side on which
the pilot’s eye was obstructed.  However, the pilot testified that the light
interfered with his ability to spot other aircraft, wires, and towers because
of its interference with his night vision, which is necessary for him in
obstacle detection.  The light did not interfere with keeping the aircraft from
crashing, because the pilot had been trained in how to deal with that issue. 
We find the evidence is factually sufficient for the jury to have determined
that the pilot was impaired.

            Section 42.14(a)(2) further requires
that the operator’s ability to control the aircraft be impaired.  Amspacher
argues that the fact that the pilot was not concerned about crashing the
aircraft renders the evidence factually insufficient.  We do not believe that
the plain language of the statute requires such a narrow interpretation.  The
pilot’s ability to visually ensure that his surroundings are safe is a
component of what is necessary to control an aircraft.  The pilot stated that
the types of helicopters used by the military are difficult to see by any means
other than direct vision at night.  Being unable to see at night because of a
bright light spotlighted on the aircraft certainly could impair a pilot’s
ability to control his aircraft.  It is not necessary that the aircraft be in
immediate danger of crashing for the pilot’s ability to control the aircraft to
be impaired.

            Amspacher further contends that the
pilot’s testimony was not clear in stating that he was actually impaired, but
only that the light could possibly have impaired his ability to control the
aircraft.  The pilot stated that he looked away from the light initially and
that it became an annoyance more than anything.  The light did cause the pilot
and his trainee to change what they were doing and how they were doing it.  The
pilot reiterated several times that his training would ensure that he was not
going to crash the aircraft due to the spotlight, because he had been trained
while in the military for sudden bright flashes of light which could occur
while in combat during a deployment.  The jury, as the fact-finder, was free to
believe or disbelieve the testimony regarding whether the pilot’s ability to
control the aircraft was impaired.  The evidence was factually sufficient to
sustain the jury’s finding of guilt.  We overrule Amspacher’s issue one.   

Improper Admission of Evidence

            In his second issue, Amspacher complains of the admission of
testimony by two law enforcement officers regarding statements made by and the
conduct and demeanor of Amspacher when they approached him, apprehended him,
and later released him.  Prior to the testimony of the first sheriff’s deputy,
the trial court conducted a hearing on the admissibility of the deputy’s
testimony.  Amspacher objected to the testimony pursuant to Texas Rules of
Evidence 401 and 403.  The trial court determined that the testimony would be
admissible for both deputies, although there was no testimony at that hearing
by the second deputy.

            When reviewing a trial court's ruling
on the admission of evidence, we apply an abuse of discretion standard of
review. Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  A
trial court abuses its discretion when its decision lies outside the zone of
reasonable disagreement.  Id.  

Texas Rule of Evidence 403 provides, "Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence."  Tex. R. Evid. 403.

Although the Texas Rules
of Evidence are intentionally slanted toward the inclusion of all relevant
evidence, Rule 403 gives the trial court considerable discretion to exclude
evidence when it appears to that individual judge, in the context of that
particular trial, to be insufficiently probative when measured against the
countervailing factors specified in the rule.  Winegarner v. State, 235
S.W.3d 787, 791 (Tex. Crim. App. 2007); see Montgomery v. State, 810
S.W.2d 372, 378-79 (Tex. Crim. App. 1991) (op. on orig. submission); 810 S.W.2d
at 391-92 (op. on reh'g); Johnson v. State, 263 S.W.3d 405, 426-427
(Tex. App.—Waco 2008, pet. ref’d). 

In a Rule 403 analysis, a
trial court must balance (1) the inherent probative force of the proffered item
of evidence along with (2) the proponent's need for that evidence against (3)
any tendency of the evidence to suggest decision on an improper basis, (4) any
tendency of the evidence to confuse or distract the jury from the main issues,
(5) any tendency of the evidence to be given undue weight by a jury that has
not been equipped to evaluate the probative force of the evidence, and (6) the
likelihood that presentation of the evidence will consume an inordinate amount
of time or merely repeat evidence already admitted.  Gigliobianco v. State,
210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); see State v. Mechler, 153
S.W.3d 435, 440 (Tex. Crim. App. 2005); Montgomery, 810 S.W.2d at
389-90 (op. on reh'g).  “The rule gives the trial court considerable latitude
to assess the courtroom dynamics, to judge the tone and tenor of the
witness' testimony and its impact upon the jury, and to conduct the necessary
balancing.”  Winegarner, 235 S.W.3d at 791.

 

Preservation of Error

To preserve error, a party must object each time
inadmissible evidence is offered unless he (1) obtains a running objection, or
(2) makes an objection outside the presence of the jury to all the testimony he
deems objectionable.  Martinez v. State,
98 S.W.3d 189, 193 (Tex. Crim. App. 2003); see Tex. R. App. P. 33.1.  Any error in the admission of
evidence, however, is cured when the same evidence comes in elsewhere without
objection, either before or after the complained-of ruling.  Lane v. State,
151 S.W.3d 188, 193 (Tex. Crim. App. 2004).  A defendant who fails to preserve
error regarding the evidence's admissibility forfeits his complaint on appeal. 
Badall v. State, 216 S.W.3d 865, 867 (Tex. App.—Beaumont 2007, pet.
ref'd).  However, when the court, out of the jury's presence, hears and
overrules objections to evidence, the complaining party is not required to
object again before the jury in order to preserve error.  Tex. R. Evid. 103(a); Ethington v.
State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

            The State contends that Amspacher
waived his right to complain about the testimony of the deputies because he did
not object when the second deputy testified and because he did not object when
the trooper testified.  The trooper testified that Amspacher was yelling at the
helicopter and when approached by the trooper, he refused to identify himself
or provide identification because he was not in Nazi Germany.  This testimony
was not objected to at any time.  Therefore, any complaints regarding this or
similar testimony that was admitted through other witnesses is waived.  See
Lane, 151 S.W.3d at 193.  However, the testimony regarding Amspacher’s
anger and hostility, both in general and toward the military, his use of foul
language, and references to Russia were not part of the testimony of the
trooper.

            Amspacher did object to the testimony
of the two deputies at the hearing conducted outside of the presence of the
jury based on Rule 403.  He objected again during the testimony of the first
deputy, but did not request a running objection, and did not object at all
during the second deputy’s testimony.   However, we find that his objection in
the hearing outside of the presence of the jury was sufficient to preserve
error.  See Ethington, 819 S.W.2d at 858.

            The term “probative value” refers to
the inherent probative force of an item of evidence -- that is, how strongly it
serves to make more or less probable the existence of a fact of consequence to
the litigation -- coupled with the proponent's need for that item of
evidence.   Gigliobianco, 210 S.W.3d at 241.  In Montgomery v. State,
810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g), the Court of
Criminal Appeals stated that “[w]hen the proponent [of an item of evidence] has
other compelling or undisputed evidence to establish the proposition or fact
that the [item of evidence] goes to prove, the [probative value of the item of
evidence] will weigh far less than it otherwise might in the
probative-versus-prejudicial balance.”

            The demeanor and language used by
Amspacher makes it more likely that he intended to spotlight the aircraft in
that he was angry with the military and was attempting to videotape the
helicopter, as opposed to potentially an inadvertent act.  The State’s need for
this evidence was fairly substantial in providing evidence of intent and
motive.

            The fact that Amspacher used foul
language, was critical of the Army and law enforcement, and mentioned Russia in the midst of his tirade might tend to suggest decision on an improper basis,
however, we believe any such tendency to be slight.  We do not believe that the
evidence tended to confuse or distract the jury from the main issues or that
the jury was not equipped to evaluate the probative force of the evidence, and
Amspacher has not demonstrated otherwise.  Additionally, the presentation of
the evidence was very slight in relation to the rest of the trial.  When
reviewing the evidence, we cannot say that the trial court’s decision that the
probative value outweighed any unfair prejudice was outside of the zone of reasonable
disagreement.  We overrule Amspacher’s second issue.

Conclusion

            We find that the evidence was factually sufficient to support the
conviction.  We find that the trial court did not abuse its discretion in the
admission of evidence pursuant to Rule 403.  We affirm the judgment of the
trial court.

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

Affirmed

Opinion delivered and
filed December 30, 2009

Publish

[CR25]