**Opinion issued August 29, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-11-00865-CR

_____

**DINESH KUMAR SHAH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1267727**

---

# O P I N I O N

A jury convicted Dinesh Kumar Shah of committing continuous family violence by injuring Jonathon Davidsson, a member of Shah's household, on

multiple occasions within a one-year time period.[1]  The trial court assessed his punishment at ten years' confinement in TDCJ and ordered the sentence to run consecutively to the ten-year sentence Shah received upon his adjudication of guilt in an injury to a child case.[2]  Shah's sole issue on appeal contends that the evidence that he and Davidsson were members of the same household is insufficient.  Finding no error in the trial court's judgment, we affirm.

## Background

Davidsson testified extensively about his and Shah's living arrangements during the relevant time period.  According to Davidsson, Shah began stopping by his apartment unannounced and staying until the early morning hours, beginning in January 2010.  Shah began to leave his personal items at the apartment, to such an extent that the one-bedroom apartment grew "crowded" with his belongings.  By the end of April/beginning of May, however, Shah was no longer leaving, and had "basically set[] up camp" in Davidsson's apartment.  Davidsson further testified that Shah—a man that he had once viewed as a close friend and mentor—had effectively moved in and was trying to establish a romantic relationship with him.  When Davidsson rejected Shah's advances, Shah became violent and assaulted

---

[1]  *See* TEX. PENAL CODE ANN. § 25.11(a), (e) (West 2011).

[2]  Another panel of this Court affirmed the trial court's judgment revoking Shah's community supervision in Shah's injury to a child case.  *See Shah v. State*, --- S.W.3d ----, 2012 WL 5877423 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

2

Davidsson on April 27th, May 6th, and May 20th. Davidsson testified that Shah was "staying" in his apartment when he was first assaulted, and was there "every night," either on the couch or in the apartment's only bedroom, and that "he never left" by the second and third assaults.

Davidsson, who went out of town the day after the second assault, admitted giving Shah a key to the apartment before he left but testified that he only did so because he was afraid of Shah and he felt as though he had no choice. After Davidsson returned from his trip a few days later, he and Shah were together in the apartment virtually twenty-four hours a day. Shah, who had been living in a motel room immediately prior to moving into the apartment, constantly monitored Davidsson's whereabouts and insisted on driving him everywhere he went.

On June 9th, Davidsson confronted Shah and told him that he did not want Shah living in the apartment and that he needed to move out. According to Davidsson, Shah assured him that the situation was only temporary and that he would move out when Davidsson left for a scheduled trip later that month. Davidsson left town on June 13th to visit his parents, but prior to his departure, typed a letter on his computer dictated by Shah permitting Shah to stay in the apartment while he was out of town. Davidsson testified that he did not know why Shah insisted on the letter, nor did he care, he just wanted to leave.

During re-cross examination, Shah's counsel questioned Davidsson about the hundreds of calls and texts that he and Shah exchanged in late April and early May:

> *Q.* *(By Defense Counsel)* Now, you said [Shah] moved in with you when?
>
> *A.* The last couple of days of April, beginning of May.
>
> . . .
>
> *Q.* Okay. How about this? Answer this for the jury. You told this jury under oath about an hour ago that between May 1st and May 7th, when [Shah] got a key, you could not escape because he was watching you 24/7, right?
>
> *A.* We were together all the time, yeah.
>
> *Q.* Then why is he calling you? You're 2 feet away from each other and he's texting you? Are you serious about this?
>
> . . .
>
> *Q.* Have you ever lived in a house where you actually phone somebody in the same house, especially a small one-bedroom apartment?
>
> *A.* No.
>
> . . .
>
> *Q.* How is that truthful testimony when you told the jury he was with you 24/7 in early May and he calls and texts you a hundred times a day if not more?
>
> *A.* **He was staying at my place. He was living there**. Maybe I went to get grocery stores [sic] or whenever I was going to run some quick errand or something. **But he was staying there and living there** and was -- obviously, if I was gone for five minutes, he is in complete contact with me the whole time monitoring my behavior.

(emphasis added).

4

Davidsson told his father the saga of the difficult and strange experience visited upon him by Shah, and, on June 20, 2010, he and his father contacted the Houston Police Department. When escorted by the police to the apartment, both Shah his personal belongings were gone. Shah was subsequently charged with continuous violence against a household member. The jury found Shah guilty and this appeal followed.

**Discussion**

Shah contends that there was insufficient evidence to establish him as a member of Davidsson's "household" at the time of the assaults, as defined by Family Code section 71.005, and that no rational trier of fact could have found beyond a reasonable doubt that he was a household member.

In particular, Shah argues that the State had to prove that he and Davidsson were "living" together at the time of the assaults in order to establish that they were members of the same "household," *see* TEX. FAM. CODE ANN. § 71.005 (West 2008) (defining "household"), and in order for him to have "lived" with Davidsson, there must be some evidence that he had a *legal right* to stay in the apartment. Shah contends that the evidence to prove that he "lived" in the apartment is insufficient because Davidsson repeatedly referred to the apartment as "his," Shah did not have a key to the apartment until May 7, 2010, Davidsson wrote a letter giving Shah permission to stay in the apartment while he was out of

5

town in June, and there was no evidence that Shah paid rent, was on the lease, or had any right to include or exclude other persons from the apartment. At most, Shah argues, the evidence merely establishes that he was an unwanted guest who overstayed his welcome.

Although he does not specifically couch his issue as such, we understand Shah's argument about the proper meaning of the term "living," as it is used in Family Code section 71.005, to raise a statutory interpretation argument that we will address as part of his sufficiency challenge.

## a. Standard of Review

### 1. Sufficiency of the Evidence

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See*

*Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S.Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S.Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard imbues to the fact-finder the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact-finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty

beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

It is well-established that the testimony of a sole witness to an offense may constitute legally sufficient evidence to support a conviction. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (upholding conviction for assault with intent to murder where only one witness saw defendant with gun); *Davis v. State*, 177 S.W.3d 355, 358–59 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (affirming conviction for aggravated robbery where central issue involved single witness's credibility).

## 2. Statutory Interpretation—Family Code section 71.005

This Court reviews issues of statutory interpretation de novo. *See Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). "When interpreting statutory language, we focus on the collective intent or purpose of the legislators who enacted the legislation," starting with the text itself, which "provides the best means to determine the fair, objective meaning of that text at the time of its enactment." *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)) (internal quotation marks omitted). We construe an unambiguous statute according to its plain meaning, unless such construction creates an "absurd result." *Clinton*, 354 S.W.3d at 800 (citing *Boykin*, 818 S.W.2d at 785–86).

### b. Applicable Law—Continuous Family Violence

A person commits the offense of continuous family violence if that person assaults a family or household member two or more times within a one-year period. *See* TEX. PENAL CODE ANN. § 25.11(a) (West 2011) (incorporating Penal Code section 22.01(a)(1) and Family Code section 71.005's definition of "household"); *see also* TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011) (defining "assault" as "intentionally, knowingly, or recklessly causes bodily injury to another"); TEX. FAM. CODE ANN. § 71.005 (defining "household").

### c. Analysis

The Family Code defines a "household" as "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." *See id.* at § 71.005. The terms "living together" or "living" are not defined by the Family Code or the Penal Code, which incorporates section 71.005 by reference, so we must give these terms their ordinary and common meaning. In determining the ordinary and common meaning of an undefined word in a statute, we may consider dictionary definitions. *See Ex parte Rieck*, 144 S.W.3d 510, 512 (Tex. Crim. App. 2004); *see also Lane v. State*, 933 S.W.2d 504, 515 n.12 (Tex. Crim. App. 1996) (citation omitted) (reiterating "that use of dictionary definitions of words contained in the statutory language is part of the 'plain meaning' analysis that an appellate court initially conducts [under *Boykin*] to determine whether or

not the statute in question is ambiguous."). The dictionaries that we have consulted indicate that, in this context, the terms "live" and its present participle, "living," are most commonly understood to mean, "to occupy a home," "to dwell or reside," or "to cohabit." *See* RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY, 1124 (2d ed. 2001); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981 ed.). Shah does not cite to any source in support of his argument that one can *only* "live" somewhere if he has a *legal right* to be there; none of the sources that we have consulted support such a proposition.

Although no other court has expressly addressed what it means for two people to be "living" together in the same dwelling, we note that courts—including this one—have concluded that a complainant and a defendant were members of the same "household," for purposes of Family Code section 71.005, even though there was no evidence that both individuals had a legal right to be there. *See Dixon v. State*, No. 05-09-00901-CR, 2010 WL 2180371, *3–4 (Tex. App.—Dallas June 2, 2010, no pet.) (not designated for publication) (holding evidence sufficient to prove that homeless man and woman were members of same "household" based upon testimony that they were "living" together in office of abandoned car wash); *see also Manuel v. State*, No. 01-04-00282-CR, 2005 WL 1111247, at *3–4 (Tex. App.—Houston [1st Dist.] May 5, 2005, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient to prove that defendant and complainant

were living together in complainant's townhome even though defendant's name was not on lease); *Word v. State*, No. 11-03-00403-CR, 2005 WL 994690, at *3 (Tex. App.—Eastland Apr. 28, 2005, pet. dism'd) (not designated for publication) (holding evidence sufficient to prove that defendant and complainant were members of same household based upon, inter alia, complainant's testimony that defendant spent five nights a week at her house and she "somewhat" considered him to be living with her); *Manning v. State*, 112 S.W.3d 740, 744 (Tex. App.— Houston [14th Dist.] 2003, pet. ref'd) (holding evidence sufficient to prove that defendant and his girlfriend, who had "on and off" romantic relationship, were living together even though defendant did not have key to apartment and there was no evidence that his name was on lease).

In *Manning*, the complainant testified that she and the defendant had been involved in an intimate relationship for approximately eleven years and that during that time they lived together "on and off." *Manning*, 112 S.W.3d at 745. The complainant said that on the day of the assault, she and the defendant were a couple but they were not cohabitating at that time because she had moved back to her apartment two days before the assault. *Id.* On the day of the assault, the defendant brought dinner to her apartment and ended up assaulting her. *Id.* The defendant did not have a key to the apartment at the time of the assault and there was conflicting evidence regarding whether or not he contributed to the rent. *Id.*

The defendant's mother testified that the complainant and the defendant lived at her house and an acquaintance testified that they lived together at the apartment. *Id.* at 746. The Fourteenth Court of Appeals found the evidence sufficient to prove the defendant assaulted a household member. *Id.* at 746–47.

Similarly, in *Manuel*, the complainant, who was the defendant's girlfriend, testified that the defendant lived with her in her townhome and brought all of his possessions to her townhome. 2005 WL 1111247, at *3–4. The girlfriend's testimony that they were living together during the relevant time period was corroborated by a police officer who testified that he responded to an incident at the complainant's townhome approximately one year before the assault and spoke with the defendant who told him that, although he had a wife, he had moved into the townhome with his girlfriend, the complainant. *Id.* The defendant, however, was not on the lease of the townhome and the defendant's mother and his wife testified that he lived with his mother. *Id.* Despite the conflicting evidence, this Court found the evidence was sufficient for a rational jury to conclude the defendant and the complainant were members of the same household. *Id.*

The Eastland Court of Appeals also addressed this issue in *Word*. 2005 WL 994690, at *3. In that case the complainant's neighbor testified that the defendant lived with the complainant but that she was "unaware" if he lived there "full time." *Id.* The complainant testified that the defendant was at her apartment "all the time,"

and that he spent five nights a week at her house and two nights a week at his mother's house. *Id.* She also testified that the defendant did not receive his mail at her residence but that he helped her pay the bills. *Id.* The complainant said that she "somewhat" considered the defendant to be living with her. *Id.* Although there was no evidence that the defendant was on the apartment's lease, had a key to the apartment, or otherwise had a legal right to be in the apartment, the court found the evidence sufficient to show that the defendant was a member of the complainant's household. *Id.*

In this case, Davidsson repeatedly testified that Shah was "living" with him in the apartment at the time of the assaults. According to Davidsson, Shah had moved some of his personal items into the apartment and had "basically set[] up camp" there by that time—so much so, in fact, that the small one-bedroom apartment had become "crowded" with Shah's things. Davidsson also testified that Shah was staying in the apartment with him "every night" and "he never left." This testimony is uncontroverted.

The portions of Davidsson's testimony that Shah relies upon (i.e., Davidsson's testimony that the apartment was "his," Davidsson gave Shah "permission" to stay in the apartment while he was gone in June) merely highlight possible inconsistencies in Davidsson's testimony. As the sole judge of the weight and credibility of witness testimony, it was the province of the jury to resolve any

13

such inconsistencies or conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Clayton*, 235 S.W.3d at 778 (stating reviewing court presumes fact-finder resolved any conflicting inferences in favor of verdict, and defers to that determination).

When viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational jury could have determined that that Davidsson and Shah were "living together in the same dwelling" when Shah assaulted Davidsson. We therefore hold that the State presented sufficient evidence that Shah and Davidsson were members of the same "household," as that term is defined by Family Code section 71.005, to support Shah's conviction for continuous family violence under Penal Code section 25.11(a)(1).

We overrule Shah's sole issue.

## Conclusion

We affirm the trial court's judgment.


Jim Sharp
Justice


Panel consists of Justices Keyes, Sharp, and Huddle.

Publish. TEX. R. APP. P. 47.2(b).