**Opinion issued August 9, 2016.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00409-CR

_____

**CURTIS SYLVESTER BABERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 209th District Court
Harris County, Texas
Trial Court Case No. 1299015

## MEMORANDUM OPINION

The jury found appellant, Curtis Sylvester Babers, guilty of the second-degree felony offense of sexual assault and assessed his punishment at twenty years' confinement in the Texas Department of Criminal Justice, Institutional Division and a $10,000 fine. On appeal, appellant argues that the trial court erred by overruling

his objections and admitting (1) testimony that he was watching pornographic movies and masturbating four hours after the commission of the alleged offense, and (2) a box of approximately fifty pornographic DVDs belonging to him. We reverse and remand for a new trial.

## Background

Appellant was arrested on March 15, 2011 and subsequently charged with sexually assaulting his adult daughter, C.B.

At trial, C.B. testified that her father, appellant, came to stay with her and her four-year-old son on March 6 or 7, 2011. According to C.B., appellant slept on her living room couch while she and her son shared the apartment's only bedroom. The bedroom contained a queen-sized bed for C.B. and a twin-sized bed for her son. Before moving in with C.B., appellant had been living with his girlfriend, Cynthia, and her daughter, C.E.

C.B. testified that when she arrived home from work the evening of March 12, 2011, she saw appellant drinking and watching television in her living room. After settling in for the night and putting her son to bed, C.B. had a beer with appellant in the living room. C.B. then retired to her room and went to sleep around 10:30 p.m.

At 2:30 a.m., C.B. awoke to find appellant in her bedroom performing oral sex on her while he masturbated. C.B. testified that after she "felt the lick of a

2

tongue" on her vagina and the "flick of a finger on [her] clitoris," she opened her eyes and saw appellant next to her bed. According to C.B., appellant's mouth and tongue were in her vagina and he was masturbating with his left hand.

Shocked and afraid, C.B. "jumped up and snatched the covers up over" herself. Appellant ran out of the room. When appellant attempted to return to her bedroom shortly thereafter, C.B. turned the light on and told appellant that he needed to leave her home. C.B. testified that she was unaware of what appellant was doing to her when she was asleep and that she did not consent to what had transpired between them.

C.B., who was afraid of appellant, waited until she thought that appellant was gone before she got out of bed again. When C.B. walked into her living room shortly after 6:30 a.m., however, she saw appellant was still in her home—watching pornography and masturbating. C.B. asked appellant to leave, but he refused. At that point, C.B. and her son left the apartment and went to stay with a friend.

After she learned that appellant was still living in her apartment, C.B. reported the sexual assault to the Houston Police Department on March 15, 2011. Appellant was arrested at C.B.'s apartment that same day. At some point during the investigation, C.B. gave HPD a box containing approximately fifty pornographic DVDs that appellant had brought with him when he moved into C.B.'s apartment.

3

After his arrest, appellant gave a recorded statement to police in which he claimed that, among other things, he and C.B. had been drinking that night and C.B. was confused about what happened. According to appellant, he went into C.B.'s bedroom looking for tobacco rolling papers, and he stumbled and fell, causing his hand to strike C.B.'s stomach. A redacted version of appellant's statement was admitted at trial.

Three HPD officers also testified at appellant's trial. Although five officers were present at C.B.'s apartment complex on March 15, 2011, none of the officers photographed the scene or collected any evidence from her apartment, e.g., C.B.'s bedding and the nightgown she was wearing when the assault occurred. The officers also did not attempt to collect any physical evidence from C.B.'s person because she had waited two days to report the assault and, by that time, had already showered. In fact, aside from appellant's redacted audio statement to police and the box of DVDs, the only other evidence admitted during the guilt/innocence phase of appellant's trial consisted of two maps showing the location of C.B.'s apartment complex, a photograph of the outside of C.B.'s apartment complex, a floor plan of C.B.'s apartment, a photograph of appellant from March 2011, and a Texas Statutory Warning blue card.

The State called twenty-four-year-old C.E. as its final witness during the guilt/innocence phase of trial.[1] C.E. testified that appellant had been living with her and her mother until appellant moved out sometime in March 2011.

Before trial, appellant objected to the admission of a box of pornographic DVDs, and to any testimony regarding C.B.'s observations of him watching pornography and masturbating within hours of the alleged sexual assault, based on Texas Rules of Evidence 404(b) and 403. The State argued that the evidence was admissible because it was "all part of the context of the crime." When appellant sought clarification regarding the basis on which the State was offering the evidence in order to determine whether he needed to request a limiting instruction, as well as for purposes of appeal, the prosecutor acknowledged that she was not offering the evidence for a limited purpose as allowed by Rule 404(b); rather, she was offering it as contextual evidence that was relevant to appellant's intent and state of mind.[2] The court overruled appellant's objections and granted him a running objection. The

---

[1] The significance of C.E.'s brief testimony, however, likely was not apparent to the jury until C.E. testified again during the punishment phase of appellant's trial. During the punishment phase, C.E. testified that appellant began living in the apartment C.E. shared with her mother in early 2011. One night after appellant moved in, C.E. woke up around midnight, and discovered appellant standing at the end of her bed, penetrating her vagina with his finger. This alleged assault would have occurred shortly before appellant moved in with C.B. and her son in March 2011.

[2] The prosecutor also informed the court that she would be offering the box of pornographic DVDs "to also corroborate what [C.B.] was saying that she observed her father doing. So, that evidence would be also further corroboration to [C.B.]."

5

trial court also noted that because the State was arguing only that the evidence was admissible as contextual evidence, appellant was not entitled to a limiting instruction.[3]

The prosecutor discussed the box of pornographic DVDs and appellant's conduct after the sexual assault in her opening and closing statements to the jury during the guilt/innocence phase. Specifically, in her opening statement, the prosecutor informed the jury that the evidence would show that appellant, "who had been watching inappropriate videos on the television, had been masturbating, came into her bedroom, lifted up her nightgown and proceeded to have oral sex with her, touch her vagina with his hands while he was masturbating." The prosecutor further contended that the evidence would also show that:

> when [C.B.] left [her apartment] at 7 o'clock in the morning after that terrible night with her little boy that she observed her father to still be watching his dirty videos and to still be masturbating in her home. At the conclusion of this case, the evidence will show you that [appellant] just could not help himself.

In her closing statement to the jury, the prosecutor argued:

---

[3] Specifically, the trial court stated: "Okay. Your 404(b)—whether that's—and that is not the reason they are offering it—is overruled. 403 is also overruled. And you're not going to ask for a limiting instruction because it's contextual." As the trial court correctly noted, a limiting instruction is not required when evidence of extraneous offenses is admitted as same transaction contextual evidence. *Devoe v. State*, 354 S.W.3d 457, 471 (Tex. Crim. App. 2011).

> Why is [appellant] in his daughter's bedroom at 2:30 in the morning after watching pornos,[4] jacking off, saying he fell? Use your common sense. That's exactly what I'm asking you to do.
>
> . . . .
>
> What was . . . that disgusting man doing in his daughter's bedroom that night? He couldn't help himself. He was watching his pornos. And you can look. There are 50 of them in this box. Watching his pornos, masturbating, getting drunk, and he could not help himself. That nasty, disgusting man went into the daughter's bedroom where his grandson sleeps.

At the jury's request, "all" of the evidence in the case, including the box of pornographic DVDs, was provided to the jury during their deliberations.

The jury found appellant guilty of sexually assaulting C.B. and assessed his punishment at twenty years' confinement and a $10,000 fine. This appeal followed.

## Same Transaction Contextual Evidence

Appellant argues that the trial court abused its discretion by admitting C.B.'s testimony that she observed him masturbating and watching pornography in her living room four hours after the alleged sexual assault, and the box of pornographic DVDs because such evidence was inadmissible as character-conformity evidence under Rule of Evidence 404(b), and, the evidence was more prejudicial than probative, in violation of Rule of Evidence 403. *See* TEX. R. EVID. 403, 404(b).

---

[4] Although the State argued that appellant had been watching pornography *before* he assaulted C.B., there is no evidence in the record to support such an assertion. C.B. testified that when she arrived home on March 12, 2011 appellant was watching "[j]ust regular TV, something regular on TV."

7

The State responds that the evidence was admissible as same transaction contextual evidence, and the trial court did not abuse its discretion in applying the Rule 403 balancing test and deciding that the evidence was more probative than prejudicial. The State further responds that even if the trial court abused its discretion by admitting this evidence, such errors were harmless.

## A.      Standard of Review and Applicable Law

Under Texas Rule of Evidence 404(b), evidence of extraneous crimes, wrongs, and other bad acts is not admissible at the guilt/innocence phase of trial to prove that a defendant committed the charged offense in conformity with a bad character trait. TEX. R. EVID. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Such evidence, however, may be introduced if it constitutes same transaction contextual evidence. *Devoe*, 354 S.W.3d at 469.[5] When different crimes are intermixed in such a way that they form an indivisible criminal transaction, and full proof by testimony of any one of these crimes cannot be given without revealing the others, such crimes are collectively referred to as same transaction contextual

---

[5]      The Court of Criminal Appeals has delineated two types of background evidence: (1) same transaction contextual evidence; and (2) background contextual evidence. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (citing *Mayes v. State*, 816 S.W.2d 79, 86–87 (Tex. Crim. App. 1991)). Background contextual evidence offered only for the reason that it is "background" evidence and therefore helpful to the jury is not admissible under Rule 404(b). *See Rogers*, 853 S.W.2d at 33 n.5 (discussing *Mayes*). Background contextual evidence, however, may be admissible for specific, non-character-conformity purposes, such as to prove motive, opportunity, intent, preparation, or plan, pursuant to Rule 404(b)(2). TEX. R. EVID. 404(b)(2).

evidence. *Id.* Same transaction contextual evidence, however, is only admissible if the facts and circumstances of the charged offense would make little or no sense without also bringing in the same transaction contextual evidence. *Id.* In other words, same transaction contextual evidence is only "where such evidence is *necessary* to the jury's understanding of the instant offense." *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (emphasis in original).

Such evidence is admitted, not because it has any particular evidentiary purpose, but rather, because in narrating the one offense, it is impracticable to avoid describing the other extraneous offense. *See Mayes v. State*, 816 S.W.2d 79, 86–87 (Tex. Crim. App. 1991). Thus, same transaction contextual offense evidence illuminates the nature of the crime alleged by imparting to the trier of fact information essential to understanding the context and circumstances of events. *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

In order to be admissible, same transaction contextual evidence must also satisfy Rule 403's balancing test. TEX. R. EVID. 403. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.[6]

---

[6] A Rule 403 analysis by the trial court should include, but is not limited to, the following considerations: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, indelible way; (3) the time needed by the proponent to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

A trial court's ruling on the admissibility of evidence is reviewed under an abuse-of-discretion standard. *Devoe*, 354 S.W.3d at 469. As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *Id.*

## B.  Analysis

In this case, appellant was charged by indictment with "unlawfully, intentionally and knowingly" causing C.B.'s sexual organ, i.e., her vagina, to contact appellant's mouth, without C.B.'s consent, and knowing that C.B. "was unaware that the sexual assault had occurred." After reviewing the record, it is apparent that C.B.'s testimony about the sexual assault, standing alone, was sufficient for the jury to understand the nature of the crime committed against her. It was not necessary for the jury to know about appellant's pornography collection, or to hear that C.B. had seen appellant watching pornography and masturbating four hours after the assault in order for the jury to understand that appellant had sexually assaulted C.B. by performing oral sex on her while she was asleep. The jury's understanding of the charged offense would not have been impaired or clouded had C.B. described the events surrounding the sexual assault without mentioning the extraneous information. Therefore, the testimony about appellant's conduct four hours after the sexual assault, and his possession of a box of pornographic DVDs, were not admissible under the same-transaction-contextual-evidence exception to Rule

404(b). *See Devoe*, 354 S.W.3d at 469; *see also Delgado*, 235 S.W.3d at 253 ("Same transaction contextual evidence refers to those events and circumstances that are intertwined, inseparable parts of an event that, if viewed in isolation, would make no sense at all.").

Accordingly, we hold that the trial court abused its discretion when it admitted the complained-of evidence and testimony on this basis.[7]

**Harm**

Having determined that the trial court erred by admitting testimony regarding appellant's box of pornographic DVDs and C.B.'s observations of appellant watching pornographic movies and masturbating after he sexually assaulted her, as well as the box of DVDs itself, we must now determine whether appellant was harmed by these errors.

**A.      Standard of Review and Applicable Law**

The introduction of extraneous offense evidence is "inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges not part of the present case against him." *Sims v. State*, 273 S.W.3d 291, 294–95 (Tex. Crim. App. 2008) (quoting *Pollard v. State*, 255 S.W.3d 184, 187–88 (Tex.

---

[7]      Having determined that the evidence was inadmissible under the same-transaction-contextual-evidence exception to Rule 404(b), we do not need to consider whether such evidence is also more prejudicial than probative in violation of Rule 403. *See* TEX. R. EVID. 403, 404(b).

11

App.—San Antonio 2008), *aff'd,* 277 S.W.3d 25 (Tex. Crim. App. 2009)); *accord Carter v. State*, 145 S.W.3d 702, 710 (Tex. App.—Dallas 2004, pet. ref'd). "By its very nature, an improperly admitted extraneous offense tends to be harmful. It encourages a jury to base its decisions on character conformity, rather than evidence that the defendant committed the offense with which he or she has been charged." *Jackson v. State*, 320 S.W.3d 873, 889 (Tex. App.—Texarkana 2010, pet. ref'd).

We review the erroneous admission of extraneous offense or extraneous bad act evidence for non-constitutional error under Texas Rule of Appellate Procedure 44.2(b). TEX. R. APP. P. 44.2(b); *Martin v. State*, 176 S.W.3d 887, 897 (Tex. App.—Fort Worth 2005, no pet.). Under Rule 44.2(b), we are to disregard the error unless it affected appellant's substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet. ref'd). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of

12

the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

## B.    Analysis

Evidence of an extraneous offense or bad act is "inherently prejudicial" to a defendant, given its propensity to confuse the issues and encourage the jury to base its decisions on character conformity, rather than the evidence. *See Sims*, 273 S.W.3d at 294–95; *Jackson*, 320 S.W.3d at 889. Accordingly, the character of the erroneously admitted extraneous evidence in this case, i.e., evidence of appellant's extraneous bad acts, weighs in favor of a finding of harm.

Our concerns about the character of the erroneously admitted evidence are enhanced when we consider the overall paucity of evidence in this case and the nature of the evidence supporting the verdict. The evidence supporting appellant's guilty verdict consists primarily of C.B.'s testimony and, to a lesser extent, appellant's statement to police in which he acknowledged being in C.B.'s bedroom the night the alleged sexual assault occurred. In fact, C.B.'s testimony and appellant's statement are the only evidence of the sexual assault. There is no physical

evidence linking appellant to the charged offense or even establishing that a sexual assault occurred.[8] The other evidence and testimony admitted at trial establishes largely tangential matters, largely irrelevant to the commission of the offense, such as the location and appearance of C.B.'s apartment complex, the floor plan of C.B.'s apartment, appellant's appearance in March 2011, and HPD's investigation of the case.

Although the amount of testimony and time spent developing the erroneously admitted evidence during appellant's one-day trial was relatively small, our concern about the harmfulness of the errors in this case is further enhanced by the prosecutor's repeated references to the evidence in both her opening and closing statements, as well as some of the language she used to refer to appellant.

The State argued, in its opening statement, that appellant had been "watching inappropriate videos on the television, had been masturbating, came into [C.B.'s] bedroom," and when observed at seven o'clock in the morning appellant was found to "still be watching his dirty videos and to still be masturbating in her home." In closing, the State argued appellant came into "his daughter's bedroom at 2:30 in the morning after watching pornos, jacking off," and "[h]e couldn't help himself. He

---

[8] We are not suggesting that the evidence supporting the jury's verdict was insufficient. Indeed, the testimony of a single witness can be sufficient evidence to support a conviction. *Shah v. State*, 414 S. W.3d 808, 812 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

14

was watching his pornos. And you can look. There are 50 of them in this box. Watching his pornos, masturbating, getting drunk, and he could not help himself." These statements are completely unsupported by the record. There is no evidence about porno watching or masturbation until hours after the incident. The introduction and use of the evidence exceeds use as contextual evidence and borders on use as character conformity evidence. Our evaluation of the potential harm of this evidence has to take into consideration that this evidence was introduced in a one-witness, four year-old, no-forensic-evidence case and could have had the effect of convincing the jury that appellant was more likely to have committed this crime because he was a "nasty, disgusting man." While such an inference may be supported by the evidence, that is not, in and of itself, a crime and does not support the conviction, unless one can assume that his character is such that he would be more likely to commit such a crime, and that the law forbids us to do. *See Devoe*, 354 S.W.3d at 469.

Given the character of the erroneously admitted evidence, the paucity of the other evidence in this case, and the State's references in its opening and closing statements to the box of pornography and C.B.'s testimony regarding appellant's lewd behavior four hours after the sexual assault, the erroneously admitted evidence had an enormous potential to encourage the jury to base its decision on character

conformity (i.e., that appellant was, as the State argued in its closing statement, a "nasty, disgusting man," who "couldn't help himself").

In light of these facts and our review of the entire record, we have grave doubts that the erroneous admission of the evidence did not substantially affect the outcome of appellant's trial. *See Motilla*, 78 S.W.3d at 355. Accordingly, we hold that the admission of the box of pornographic DVDs and C.B.'s testimony that she saw appellant masturbating and watching pornography four hours after the sexual assault were harmful errors. TEX. R. APP. P. 44.2(b).

## Conclusion

We reverse the trial court's judgment and remand for a new trial.


Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).