**Opinion issued November 21, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00984-CR

————————————

**JONATHAN KENNARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 146094**

---

**MEMORANDUM OPINION**

Jonathan Kennard was indicted on a murder charge. A jury found him guilty as charged and assessed a sentence of 40 years' incarceration. On appeal, Kennard contends that the trial court erred in (1) entering judgment on the jury's verdict because legally insufficient evidence supports the finding that he was the

perpetrator; (2) admitting evidence of a portion of a custodial statement taken in violation of his right to counsel; (3) denying his motion to suppress; and (4) failing to instruct the jury to disregard the State's improper jury argument and denying a motion for mistrial. We affirm.

## Background

In late February 2015, James Daniels posted an invitation on Facebook to his friends to have them come celebrate his birthday at a nightclub near the intersection of FM 1960 and Kuykendall Road in Harris County. Daniels, accompanied by his friend Lester Williams, joined by a number of others, spent a few hours at the club. While they were there, Daniels noticed Kennard, accompanied by his brother, Julius, walk past him and make a gesture.

Several months earlier, Daniels and Williams had a previous encounter with the Kennards. The brothers were visiting at the apartment complex where Daniels and Williams lived. Williams confronted Kennard because Kennard carried a gun, which he had concealed inside a small backpack, into the complex. They began to argue. Williams punched Kennard, tugged the gun bag away from him, and threw it to Daniels. Williams later sold the gun.

Because of this and other encounters, Daniels considered the Kennards' gesture at the night club to be a hostile act. He and Williams decided to leave the club about 1:00 A.M. The club was located toward the back of a strip center

2

surrounded by a large parking lot. As Daniels and Williams walked to Williams's car, they saw the Kennards in the parking lot. Daniels and Williams got into Williams's car and spent some time sitting inside talking on the phone with their friend, Jessica Hicks. Hicks, who had gotten a late start, was planning to meet Daniels and Williams at the club and follow them to another location.

Hicks was approaching the club parking lot when Williams began driving his Dodge Charger toward the exit. A dark-colored Pontiac Grand Prix pulled up behind Williams and Daniels. The driver and front-seat passenger both began shooting at them. Four shots hit Williams. As the Charger rolled across FM 1960 and into the median, multiple witnesses saw Kennard and his brother get out of the Grand Prix, walk toward the Charger, and fire multiple rounds into the car. At the same time, Daniels leapt out of the passenger side of Williams's car. Daniels fled across the street. The Kennards continued to shoot, this time in Daniels's direction, but they did not hit him. Daniels glanced back while running and recognized the Grand Prix as Julius Kennard's car. The Kennards got back into the car and sped off.

As these events were occurring, a crowd gathered outside the club. Hicks, meanwhile, pulled her car some distance from the gunfight. She recognized the shooters as the Kennard brothers. Ebony Jackson was sitting in her car in the club parking lot when she saw a Pontiac approach a Dodge Charger that was about to leave the lot and turn onto FM 1960. She saw the Pontiac's driver, whom she later

3

identified as Kennard, get out, walk up to the Charger, and start shooting into the car.

Niesha Booker heard gunshots while on her way to her car from the club. She saw Kennard shooting at the driver's side of the Charger and saw Julius shooting at the passenger. She later positively identified Kennard from a photo array. She tentatively identified his brother Julius as the other shooter.

Russell Boyd, a tow truck driver, was sitting in his truck in the strip center parking lot near a retail boot store when the shooting started. He saw two men with guns get out of a Pontiac Grand Prix, run up to the victim's car, and fire multiple rounds into the car. As Boyd followed the Pontiac to try to get the license plate number, he saw something metal fly out of the passenger window and hit the ground. He pulled over to retrieve the item. As he walked toward it, he realized it was a semiautomatic pistol.

Williams died at the scene. Law enforcement secured the area, took witness statements, and retrieved evidence. The firearm expert testified that all of the casings found at the scene were fired from the gun that Boyd found.

Kennard was arrested and brought to Deputy R. Simmons of the Harris County Sheriff's Office, who was in charge of the investigation.

## DISCUSSION

### I. The evidence is legally sufficient to identify Kennard as a perpetrator of the murder.

#### A. Standard of review

Kennard contends that the evidence is legally insufficient to support his conviction. We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the factfinder's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We defer to the factfinder's responsibility to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. As the judge of the facts and credibility of the witnesses, the factfinder could choose to believe or not to believe the witnesses, or any portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). An appellate court reviewing an evidentiary sufficiency challenge is charged with the responsibility to ensure that the evidence presented supports the conclusion that the

defendant committed the criminal offense of which he is accused. *Williams*, 235 S.W.3d at 750. The appellate court determines whether the necessary inferences are reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, an appellate court presumes that the factfinder resolved the conflicts in favor of the prosecution and therefore defers to that determination. *Id.*; *see Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Gonzalez v. State*, 337 S.W.3d 473, 479 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). An appellate court likewise defers to the factfinder's evaluation of the credibility of the evidence and weight to give the evidence. *Gonzalez*, 337 S.W.3d at 479 (citing *Williams*, 235 S.W.3d at 750). Direct and circumstantial evidence are treated equally: circumstantial evidence can be as probative as direct evidence and circumstantial evidence alone can be sufficient to establish guilt. *Id.* (citing *Clayton*, 235 S.W.3d at 778).

**B.    Analysis**

Kennard specifically claims that the evidence may be sufficient to place him at the scene, but not to establish his identity as a shooter. He points to inconsistencies among the eyewitness accounts, contending that they are so conflicting that a

6

rational juror could not find that the shooter's identity was established beyond a reasonable doubt.

The jury, however, was not required to find that Kennard was the shooter. The charge alternatively permitted a finding of guilt if Kennard, with the intent to cause the death of or serious bodily injury to Lester Williams, and, "with the intent to promote or assist the commission of the offense, . . . solicited, encouraged, directed, aided or attempted to aid Julius Kennard and/or another unknown person to commit the offense." Kennard does not challenge the sufficiency of the evidence supporting a finding of guilt from having solicited, encouraged, directed, aided, or attempted to aid either his brother or another unknown person to kill or cause serious bodily injury to Williams. Under this instruction, the jury properly could find Kennard guilty of the murder without evidence establishing that he shot the bullets that killed Williams.

The record contains testimony from three witnesses who were previously acquainted with Kennard and affirmatively identified him as one of the two shooters. Jackson testified that she saw Kennard get out of the driver's side of the Pontiac Grand Prix sedan and shoot into Williams's car. Jackson also identified Kennard from a photo array. Hicks testified that she saw two individuals shooting at Williams's car from a black sedan, and she recognized Kennard and his brother when they came out of the sedan and continued to shoot toward Daniels. She recounted

7

that Kennard came out of the driver's side door and his brother Julius came out of the passenger-side door. Daniels testified that Julius drove a blue Pontiac Grand Prix and that the shooters were in Julius's car. And Boyd, the tow truck driver, testified that he saw the two shooters in a Pontiac Grand Prix.

As Kennard acknowledges, the testimony of a sole witness to an offense may constitute legally sufficient evidence to support a conviction. *Shah v. State*, 414 S.W.3d 808, 812 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (first citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); and then citing *Davis v. State*, 177 S.W.3d 355, 358–59 (Tex. App.—Houston [1st Dist.] 2005, no pet.)). "The 'jury is the sole judge of credibility and weight to be attached to the testimony of witnesses.'" *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016) (quoting *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. 2014)). "[W]hen the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Dobbs*, 434 S.W.3d at 170 (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2793). In this case, multiple witnesses identified Kennard as one of the shooters.

The minor inconsistencies that Kennard complains about—that Hicks could not identify him from a photo array she was shown some months after the incident and that Jackson testified she saw the driver get out and shoot into the driver's side of Williams's car—would not prevent a rational factfinder from finding each

8

essential element of the crime charged beyond a reasonable doubt. We hold that the evidence is legally sufficient to support the jury's verdict.

**II.    The trial court acted within its discretion in allowing the jury to hear Kennard's admission to Deputy Simmons that he was at the club the evening of Williams's murder.**

**A.    Applicable law and standard of review**

Kennard complains that the trial court erred in admitting his statement that he was at the club the night of Williams's murder because he had invoked his *Miranda* rights beforehand. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); TEX. CODE CRIM. PROC. Art. 38.22, §§ 2, 3. We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). We will uphold the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Tillman*, 354 S.W.3d at 435, 442; *accord Walker*, 321 S.W.3d at 22. If the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of applicable law, we will uphold the decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Tarley v. State*, 420 S.W.3d 204, 206 (Tex. App.–Houston [1st Dist.] 2013, pet. ref'd).

### B. Analysis

The record shows that, with Officer Miller present, Deputy Simmons administered *Miranda* warnings and then asked Kennard whether he wanted to talk. Kennard responded that it depended on the questions they asked. Deputy Simmons again asked Kennard if he wanted to talk. Kennard agreed to talk to the officers. At that point, Officer Miller interjected and asked appellant if he understood the *Miranda* warnings and whether he wanted to waive those warnings and talk to them. Kennard replied "No, I really would like a lawyer but I don't know what's going on, my man, like, at all, I don't. I know I left at a certain time. So I only stayed in there for a few minutes." Officer Miller attempted to stop Kennard, but Kennard continued talking, saying that everyone knows him because he's a tattoo artist, so it was not hard for people to say he was there. Kennard stated that he had nothing to do with the murder. Kennard then stated that he wanted an attorney, and the interview was promptly terminated.

Kennard received the *Miranda* warnings and was reminded again of his rights before telling the officers that he was present at the nightclub that evening. Kennard did not pause between his statement that he would "like a lawyer" and his admission. He did not make the admission in response to any question from the officers. Thus, the admission was not "the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response."

10

*Rhode Island v. Innis*, 446 U.S. 291, 299–300, 303, 100 S. Ct. 1682, 1689, 1691 (1980). When an accused in custody spontaneously volunteers information that is not in response to earlier interrogation by authorities, the information does not stem from a custodial interrogation and thus, is admissible. *See Stevens v. State*, 671 S.W.2d 517, 520 (Tex. Crim. App. 1984); *Badall v. State*, 216 S.W.3d 865, 868–69 (Tex. App.—Beaumont 2007, pet. ref'd). Accordingly, we hold that the trial court acted within its discretion in overruling Kennard's objection and allowing the jury to hear the admission.

## III. Any error in admitting Kennard's cell phone records did not affect his substantial rights.

Kennard challenges the trial court's denial of his motion to suppress his cell-phone records and all testimony relating to them. He contends that this evidence, obtained through his response to Deputy Simmons's request for his phone number, is inadmissible as a product of custodial interrogation that occurred before he received *Miranda* warnings.

Both *Miranda* and state law prohibit the State from introducing a defendant's statements made during a custodial interrogation, unless the State demonstrates that, before making the statement, the police had informed the defendant of certain constitutional rights. 384 U.S. at 444, 86 S. Ct. at 1612; *accord* TEX. CODE CRIM. PROC. art. 38.22 §§ 2, 3. "Interrogation" refers to (1) express questioning and (2) any words or actions of the police, other than those normally attendant to arrest and

11

custody, that police should know are reasonably likely to elicit an incriminating response from the suspect. *Alford v. State*, 358 S.W.3d 647, 653–54 (Tex. Crim. App. 2012).

Routine booking questions that are "reasonably related to the police's administrative concerns" are a recognized exception to *Miranda*. *Id.* Questions such as a defendant's name, address, height, weight, eye color, date of birth, age, place of employment, and physical disabilities fall within the exception. *Id.* at 654–55. We review de novo the objective reasonableness of a question's stated administrative purpose, but defer to the trial court's resolution of the disputed facts. *Alford*, 358 S.W.3d at 661.

"[T]he biographical nature of the question does not alone exempt it from being interrogation." *State v. Cruz*, 461 S.W.3d 531, 538 (Tex. Crim. App. 2015). But questioning a suspect about his address and phone number does not become interrogation simply because the answers enable police to locate and search his home or obtain his cell-phone records. *Id.* at 539. Even when the question may be merely administrative in most circumstances, it is not so when police should know that it is reasonably likely to elicit an incriminating response from the suspect. *See id.* Under those circumstances, the question constitutes interrogation. *Id.* at 540.

Pertinent to Kennard's motion to suppress, Deputy Simmons testified that before interviewing a person who has been arrested, it is her common practice to ask the person to provide his name, date of birth, address, and phone number. Deputy Simmons explained that she uses that information to confirm that she is speaking to the same person identified on the warrant. She acknowledged that Kennard had already been arrested and booked by another officer when she asked him those questions. Deputy Simmons denied that she asked Kennard for his phone number with the intent to obtain a warrant for his cell-phone records. She was aware before interviewing Kennard that a cell phone and a gun were found at the scene, but at that point, no evidence linked the phone to Kennard.

In *Cruz*, the Court concluded that the question for the appellee's cell-phone number was likely to lead to an incriminating response because the detectives were seeking to obtain the number to try to link him, through cell tower data, to a location and time that was close to the murder. *Id.* at 540. In this case, Kennard's cell phone records were presented at trial as evidence that he was at or near the club at the time of Williams's murder and that he had communicated with his brother and Stokes before they arrived at the club.

That evidence was cumulative of other uncontested evidence presented at trial. Kennard's whereabouts that evening were not in serious dispute. He voluntarily had admitted that he had been present at the club that evening, and the

13

witnesses who were previously acquainted with Kennard also testified that he was there with his brother. As a result, we hold any error in admitting the cell-phone records did not affect Kennard's substantial rights. *See* TEX. R. APP. P. 44.2.

## IV. Improper jury argument

### A. Standard of review and applicable law

Finally, Kennard complains about the trial court overruling his objection and failing to instruct the jury to disregard the portion of the State's closing argument at the punishment phase that improperly appealed to community expectations. A trial court's ruling on an objection to improper jury argument is reviewed for abuse of discretion. *See Hawkins v. State*, 135 S.W.3d 72, 22 (Tex. Crim. App. 2004). Permissible jury argument falls into four distinct and limited categories: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). We examine alleged improper argument in light of the facts adduced at trial and in the context of the entire argument. *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989).

Even if an argument is improper, it will not constitute grounds for reversal unless the statements to the jury injected new and harmful facts to the case, or were so extreme and manifestly improper that they deprived appellant of a fair and impartial trial. *Brown*, 270 S.W.3d at 573 n.3. In determining whether jury argument

14

is extreme or manifestly improper, "we look at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* at 573 (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)). "It is not enough that the prosecutors' remarks were undesirable or even universally condemned. . . . The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1870 (1974)).

Here, the trial court did not, as Kennard suggests, overrule his objection to the State's argument. On the contrary, the trial court sustained the objection. Kennard did not ask the court to give the jury an instruction to disregard, but he did ask the trial court to grant a mistrial, which it refused to do.

If the trial court sustains an objection to improper jury argument, the defendant must request an instruction to disregard and move for a mistrial in order to preserve error. *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998) (citing *Sawyers v. State*, 724 S.W.2d 24, 38 (Tex. Crim. App. 1986)). If, as here, the defendant fails to seek an instruction to disregard, the defendant must show that the instruction would not have cured the effect of the improper argument. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) ("The party who fails to request

15

an instruction to disregard will have forfeited appellate review of that class of events that could have been 'cured' by such an instruction. But if an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal."), *quoted in Pierson v. State*, 426 S.W.3d 763, 778 n.15 (Tex. Crim. App. 2014).

Harm arising from improper jury argument is incurable if the argument (1) is extreme, improper, injects new and harmful facts into the case, or violates a mandatory statutory provision and (2) as a result, is so inflammatory that its prejudicial effect cannot reasonably be cured by an instruction to disregard. *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991); (citing *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991)).

**B. Analysis**

The portion of the punishment-phase closing argument pertinent to this issue follows:

STATE: So, how are y'all going to decide what an appropriate punishment is in this case? How are you going to decide that? I think a lot of people would say a life for a life. But this is how I want y'all to decide. When you leave here today and when you go home to your family, to your husbands, to your wives, to your children, to your parents, when you go home to your friends, to your coworkers, they're going to ask you, all right, where have you been? You're going to tell them, I had jury duty and I was selected. And they're going to say, what kind of case was it? And you're going to tell them it was a murder. And their eyes are going to get wide and they're going to say, well, what were the facts? You're going to tell them there was this guy, he did

16

something to the defendant and it upset the defendant, so he was holding a grudge against him. And for weeks he was doing stuff, driving by his apartment complex, hanging out on the corner, trying to intimidate this guy. And then the defendant found out that this guy's best friend was celebrating his birthday at this nightclub. And so, the defendant planned and he plotted and he got his brother and he and his brother went to the club that night and then when this guy and his best friend, whose birthday it was, when they were leaving the club, well, they ambushed them and the defendant basically executed this guy.

And your husband or you wife or your son or your daughter or your mom or dad, friend or coworker, they're going to say –

DEFENSE: We're going to –

STATE:        —did you find him guilty—

DEFENSE: Object to this argument as—

THE COURT: Sustained.

STATE:     Did you find him guilty? And you're going to say, well, yeah, of course. And then you're going to say, but you won't believe what we found out in punishment.

DEFENSE: Your Honor, this is the argument that we're objecting to. And we're objecting to it because basically it is telling the jury that they're responsible to someone else rather than making a decision based on the facts and circumstances in this case.

THE COURT: And the objection is sustained again.

DEFENSE: And we'd ask for a mistrial at this time.

THE COURT: That's denied.

In *Bell v. State*, 724 S.W.2d 780 (1986), the Court found the following argument to be a permissible plea for law enforcement rather than an attempt to induce the jury to convict based on community expectations:

> think about you talking to your friends and your neighbors, people who have not been involved and caught up in this hot atmosphere, but who's [sic] still maintained and managed to maintain their common sense. Remove yourself to your home and think about talking to the, [sic] and they will ask you, and remember and think about how they will ask you at the end of case when it's all over.

*Id.* at 801. It found the argument before it to be less questionable than the argument it considered in *Whittington v. State*, 580 S.W.2d 845 (Tex. Crim. App. 1979), in which it found the following argument permissible:

> The twelve of you were selected to represent the people in Harris County and the State of Texas. Your friends and neighbors. After you leave this trial, your friends and your neighbors are going to ask you what happened. . . . Now, you—and as you think about that, think about it right now. Because I think you will want to give them an answer you can be proud of, that your friends and neighbors can be proud of.

Id. at 847.

The closing argument in this case is not so prejudicial that an instruction to disregard would not cure any harm. Because Kennard did not request a curative instruction, we hold that he has not preserved for our review the trial court's denial of his motion for a mistrial. *See Young*, 137 S.W.3d at 70.

## CONCLUSION

We affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Do not publish.  TEX. R. APP. P. 47.2(b).